# OKLAHOMA TAX COMMISSION *v.* CITIZEN BAND POTAWATOMI INDIAN TRIBE OF OKLAHOMA

No. 89–1322.   Argued January 7, 1991—Decided February 26, 1991

REHNQUIST, C. J., delivered the opinion for a unanimous Court. STEVENS, J., filed a concurring opinion, *post*, p. 514.

*David Allen Miley* argued the cause for petitioner. With him on the briefs was *Joe Mark Elkouri*.

*Edwin S. Kneedler* argued the cause for the United States as *amicus curiae*. With him on the brief were *Solicitor General Starr, Assistant Attorney General Stewart, Deputy Solicitor General Wallace*, and *Robert L. Klarquist*.

*Michael Minnis* argued the cause for respondent. With him on the brief was *G. Lindsay Simmons.*[*]

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

The issue presented in this case is whether a State that has not asserted jurisdiction over Indian lands under Public Law 280 may validly tax sales of goods to tribesmen and nonmembers occurring on land held in trust for a federally recognized Indian tribe. We conclude that under the doctrine of tribal sovereign immunity, the State may not tax such sales to Indians, but remains free to collect taxes on sales to nonmembers of the tribe.

Respondent, the Citizen Band Potawatomi Indian Tribe of Oklahoma (Potawatomis or Tribe), owns and operates a convenience store in Oklahoma on land held in trust for it by the Federal Government. For many years, the Potawatomis have sold cigarettes at the convenience store without collecting Oklahoma's state cigarette tax on these sales. In 1987, petitioner, the Oklahoma Tax Commission (Oklahoma or Commission), served the Potawatomis with an assessment letter, demanding that they pay $2.7 million for taxes on cigarette sales occurring between 1982 and 1986. The Potawatomis filed suit to enjoin the assessment in the United States District Court for the Western District of Oklahoma.

Oklahoma counterclaimed, asking the District Court to enforce its $2.7 million claim against the Tribe and to enjoin the Potawatomis from selling cigarettes in the future without col-

---

[*]Briefs of *amici curiae* urging affirmance were filed for the Cheyenne-Arapaho Tribes of Oklahoma et al. by *Melody L. McCoy, Yvonne Teresa Knight, Kim Jerome Gottschalk, Reid P. Chambers, Jeanne S. Whiteing, Robert S. Thompson III, Thomas W. Fredericks, Bertram E. Hirsch,* and *Jack F. Trope;* for the Inter-Tribal Council of the Five Civilized Tribes by *Bob Rabon;* for the Iroquois Businesspersons Association by *Joseph E. Zdarsky;* for the Sac and Fox Nation et al. by *G. William Rice* and *Gregory H. Bigler;* and for the Seneca-Cayuga Tribe of Oklahoma et al. by *Glenn M. Feldman.*

lecting and remitting state taxes on those sales. The Pota-watomis moved to dismiss the counterclaim on the ground that the Tribe had not waived its sovereign immunity and therefore could not be sued by the State. The District Court denied the Potawatomis' motion to dismiss and proceeded to trial. On the merits, the District Court concluded that the Commission lacked the authority to tax the on-reservation cigarette sales to tribal members or to tax the Tribe directly. It held, therefore, that the Tribe was immune from Oklahoma's suit to collect past unpaid taxes directly from the Tribe. Nonetheless, the District Court held that Oklahoma could require the Tribe to collect taxes prospectively for on-reservation sales to nonmembers of the Tribe. Accordingly, the court ordered the Tribe to collect taxes on sales to non-tribal members, and to comply with all statutory recordkeeping requirements.

The Tribe appealed the District Court's denial of its motion to dismiss and the court's order requiring it to collect and remit taxes on sales to nonmembers. The United States Court of Appeals for the Tenth Circuit reversed. 888 F. 2d 1303 (1989). That court held that the District Court erred in entertaining Oklahoma's counterclaims because the Potawatomis enjoy absolute sovereign immunity from suit, and had not waived that immunity by filing an action for injunctive relief. The Court of Appeals further held that Oklahoma lacked the authority to impose a tax on any sales that occur on the reservation, regardless of whether they are to tribesmen or nonmembers. It concluded that "because the convenience store is located on land over which the Potawatomis retain sovereign powers, Oklahoma has no authority to tax the store's transactions unless Oklahoma has received an independent jurisdictional grant of authority from Congress." *Id.*, at 1306. Finding no independent jurisdictional grant of authority to tax the Potawatomis, the Court of Appeals ordered the District Court to grant the Potawatomis' request for an injunction.

We granted certiorari to resolve an apparent conflict with this Court's precedents and to clarify the law of sovereign immunity with respect to the collection of sales taxes on Indian lands. 498 U. S. 806 (1990). We now affirm in part and reverse in part.

I

Indian tribes are "domestic dependent nations" that exercise inherent sovereign authority over their members and territories. *Cherokee Nation* v. *Georgia*, 5 Pet. 1, 17 (1831). Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation. *Santa Clara Pueblo* v. *Martinez*, 436 U. S. 49, 58 (1978). Petitioner acknowledges that Indian tribes generally enjoy sovereign immunity, but argues that the Potawatomis waived their sovereign immunity by seeking an injunction against the Commission's proposed tax assessment. It argues that, to the extent that the Commission's counterclaims were "compulsory" under Federal Rule of Civil Procedure 13(a), the District Court did not need any independent jurisdictional basis to hear those claims.

We rejected an identical contention over a half-century ago in *United States* v. *United States Fidelity & Guaranty Co.*, 309 U. S. 506, 511–512 (1940). In that case, a surety bondholder claimed that a federal court had jurisdiction to hear its state-law counterclaim against an Indian Tribe because the Tribe's initial action to enforce the bond constituted a waiver of sovereign immunity. We held that a tribe does not waive its sovereign immunity from actions that could not otherwise be brought against it merely because those actions were pleaded in a counterclaim to an action filed by the tribe. *Id.*, at 513. "Possessing . . . immunity from direct suit, we are of the opinion [the Indian nations] possess a similar immunity from cross-suits." *Ibid.* Oklahoma does not argue that it received congressional authorization to adjudicate a counterclaim against the Tribe, and the case is therefore controlled by *Fidelity & Guaranty.* We uphold the Court of Appeals'

determination that the Tribe did not waive its sovereign immunity merely by filing an action for injunctive relief.

Oklahoma offers an alternative, and more far-reaching, basis for reversing the Court of Appeals' dismissal of its counterclaims. It urges this Court to construe more narrowly, or abandon entirely, the doctrine of tribal sovereign immunity. Oklahoma contends that the tribal sovereign immunity doctrine impermissibly burdens the administration of state tax laws. At the very least, Oklahoma proposes that the Court modify *Fidelity & Guaranty*, because tribal business activities such as cigarette sales are now so detached from traditional tribal interests that the tribal-sovereignty doctrine no longer makes sense in this context. The sovereignty doctrine, it maintains, should be limited to the tribal courts and the internal affairs of tribal government, because no purpose is served by insulating tribal business ventures from the authority of the States to administer their laws.

A doctrine of Indian tribal sovereign immunity was originally enunciated by this Court and has been reaffirmed in a number of cases. *Turner* v. *United States*, 248 U. S. 354, 358 (1919); *Santa Clara Pueblo* v. *Martinez, supra*, at 58. Congress has always been at liberty to dispense with such tribal immunity or to limit it. Although Congress has occasionally authorized limited classes of suits against Indian tribes, it has never authorized suits to enforce tax assessments. Instead, Congress has consistently reiterated its approval of the immunity doctrine. See, *e. g.*, Indian Financing Act of 1974, 88 Stat. 77, 25 U. S. C. § 1451 *et seq.*, and the Indian Self-Determination and Education Assistance Act, 88 Stat. 2203, 25 U. S. C. § 450 *et seq.* These Acts reflect Congress' desire to promote the "goal of Indian self-government, including its 'overriding goal' of encouraging tribal self-sufficiency and economic development." *California* v. *Cabazon Band of Mission Indians*, 480 U. S. 202, 216 (1987). Under these circumstances, we are not disposed to modify the long-established principle of tribal sovereign immunity.

Finally, Oklahoma asserts that even if sovereign immunity applies to direct actions against tribes arising from activities on the reservation, that immunity should not apply to the facts of this case. The State contends that the Potawatomis' cigarette sales do not, in fact, occur on a "reservation." Relying upon our decision in *Mescalero Apache Tribe* v. *Jones*, 411 U. S. 145 (1973), Oklahoma argues that the tribal convenience store should be held subject to state tax laws because it does not operate on a formally designated "reservation," but on land held in trust for the Potawatomis. Neither *Mescalero* nor any other precedent of this Court has ever drawn the distinction between tribal trust land and reservations that Oklahoma urges. In *United States* v. *John*, 437 U. S. 634 (1978), we stated that the test for determining whether land is Indian country does not turn upon whether that land is denominated "trust land" or "reservation." Rather, we ask whether the area has been "'validly set apart for the use of the Indians as such, under the superintendence of the Government.'" *Id.*, at 648–649; see also *United States* v. *McGowan*, 302 U. S. 535, 539 (1938).

*Mescalero* is not to the contrary; that case involved a ski resort outside of the reservation boundaries operated by the Tribe under a 30-year lease from the Forest Service. We said that "[a]bsent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the State." 411 U. S., at 148–149. Here, by contrast, the property in question is held by the Federal Government in trust for the benefit of the Potawatomis. As in *John*, we find that this trust land is "validly set apart" and thus qualifies as a reservation for tribal immunity purposes. 437 U. S., at 649.

## II

Oklahoma attacks the conclusion of the Court of Appeals that the sovereign immunity of the Tribe prevents it from

being liable for the collection of state taxes on the sale of cigarettes to nonmembers of the Tribe. The Tribe, in turn, argues that this issue is not properly before us. It observes that the only issue presented in its prayer for an injunction was whether Oklahoma could require it to pay the challenged assessment for previously uncollected taxes. The complaint did not challenge Oklahoma's authority to require the Tribe to collect the sales tax prospectively, and thus, the Tribe argues, that question was never put in issue.

We do not agree. The Tribe's complaint alleged that Oklahoma lacked authority to impose a sales tax directly upon the Tribe. The District Court held that the Tribe could be required to collect the tax on sales to nonmembers. The Court of Appeals reversed the decision of the District Court on this point. While neither of these courts need have reached that question, they both did. The question is fairly subsumed in the "questions presented" in the petition for certiorari, and both parties have briefed it. We have the authority to decide it and proceed to do so. See *Vance* v. *Terrazas*, 444 U. S. 252, 258–259, n. 5 (1980).

Although the doctrine of tribal sovereign immunity applies to the Potawatomis, that doctrine does not excuse a tribe from all obligations to assist in the collection of validly imposed state sales taxes. *Washington* v. *Confederated Tribes of Colville Reservation*, 447 U. S. 134 (1980). Oklahoma argues that the Potawatomis' tribal immunity notwithstanding, it has the authority to tax sales of cigarettes to nonmembers of the Tribe at the Tribe's convenience store. We agree. In *Moe* v. *Confederated Salish and Kootenai Tribes*, 425 U. S. 463 (1976), this Court held that Indian retailers on an Indian reservation may be required to collect all state taxes applicable to sales to non-Indians. We determined that requiring the tribal seller to collect these taxes was a minimal burden justified by the State's interest in assuring the payment of these concededly lawful taxes. *Id.*, at 483. "Without the simple expedient of having the retailer collect the sales tax

from non-Indian purchasers, it is clear that wholesale violations of the law by the latter class will go virtually unchecked." *Id.*, at 482. Only four years later we reiterated this view, ruling that tribal sellers are obliged to collect and remit state taxes on sales to nonmembers at Indian smokeshops on reservation lands. *Colville, supra.*

The Court of Appeals thought this case was distinguishable from *Moe* and *Colville.* It observed the State of Washington had asserted jurisdiction over civil causes of action in Indian country as permitted by Public Law 280. Pub. L. 280, 67 Stat. 588, 28 U. S. C. § 1360. The court contrasted *Colville* to this case, in which Oklahoma disclaimed jurisdiction over Indian lands upon entering the Union and did not reassert jurisdiction over these lands pursuant to Public Law 280. The Court of Appeals concluded that because Oklahoma did not elect to assert jurisdiction under Public Law 280, the Potawatomis were immune from any requirement of Oklahoma state tax law.

Neither *Moe* nor *Colville* depended upon the State's assertion of jurisdiction under Public Law 280. Those cases stand for the proposition that the doctrine of tribal sovereign immunity does not prevent a State from requiring Indian retailers doing business on tribal reservations to collect a state-imposed cigarette tax on their sales to nonmembers of the Tribe. *Colville*'s only reference to Public Law 280 relates to a concession that the statute did *not* furnish a basis for taxing sales to tribe members. 447 U. S., at 142, n. 8. Public Law 280 merely permits a State to assume jurisdiction over "civil causes of action" in Indian country. We have never held that Public Law 280 is independently sufficient to confer authority on a State to extend the full range of its regulatory authority, including taxation, over Indians and Indian reservations. *Bryan* v. *Itasca County*, 426 U. S. 373 (1976); see also *Rice* v. *Rehner*, 463 U. S. 713, 734, n. 18 (1983); *Cabazon*, 480 U. S., at 208–210, and n. 8. Thus, it is simply

incorrect to conclude that Public Law 280 was the essential (yet unspoken) basis for this Court's decision in *Colville*.

In view of our conclusion with respect to sovereign immunity of the Tribe from suit by the State, Oklahoma complains that, in effect, decisions such as *Moe* and *Colville* give them a right without any remedy. There is no doubt that sovereign immunity bars the State from pursuing the most efficient remedy, but we are not persuaded that it lacks any adequate alternatives. We have never held that individual agents or officers of a tribe are not liable for damages in actions brought by the State. See *Ex parte Young*, 209 U. S. 123 (1908). And under today's decision, States may of course collect the sales tax from cigarette wholesalers, either by seizing unstamped cigarettes off the reservation, *Colville*, *supra*, at 161–162, or by assessing wholesalers who supplied unstamped cigarettes to the tribal stores, *City Vending of Muskogee, Inc.* v. *Oklahoma Tax Comm'n*, 898 F. 2d 122 (CA10 1990). States may also enter into agreements with the tribes to adopt a mutually satisfactory regime for the collection of this sort of tax. See 48 Stat. 987, as amended, 25 U. S. C. § 476. And if Oklahoma and other States similarly situated find that none of these alternatives produce the revenues to which they are entitled, they may of course seek appropriate legislation from Congress.

The judgment of the Court of Appeals is accordingly

*Affirmed in part and reversed in part.*

JUSTICE STEVENS, concurring.

The doctrine of sovereign immunity is founded upon an anachronistic fiction. See *Nevada* v. *Hall*, 440 U. S. 410, 414–416 (1979). In my opinion all Governments—federal, state, and tribal—should generally be accountable for their illegal conduct. The rule that an Indian tribe is immune from an action for damages absent its consent is, however, an established part of our law. See *United States* v. *United States Fidelity & Guaranty Co.*, 309 U. S. 506, 512–513

(1940). Nevertheless, I am not sure that the rule of tribal sovereign immunity extends to cases arising from a tribe's conduct of commercial activity outside its own territory, cf. 28 U. S. C. § 1605(a) ("A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . (2) in which the action is based upon a commercial activity carried on in the United States by a foreign state . . ."), or that it applies to claims for prospective equitable relief against a tribe, cf. *Edelman* v. *Jordan*, 415 U. S. 651, 664–665 (1974) (Eleventh Amendment bars suits against States for retroactive monetary relief, but not for prospective injunctive relief).

In analyzing whether the Citizen Band Potawatomi Indian Tribe can be held prospectively liable for taxes on the sale of cigarettes, the Court today in effect acknowledges limits to a tribe's sovereign immunity, although it does not do so explicitly. The Court affirms the Court of Appeals' holding that the Oklahoma Tax Commission's counterclaim against the Tribe was properly dismissed on grounds of the Tribe's sovereign immunity, but then proceeds to address the precise question raised in the counterclaim—whether the Tribe in the future can be assessed for taxes on its sales of cigarettes. The Court indulges in this anomaly by reasoning that the issue of the Tribe's prospective liability "is fairly subsumed" in the Tribe's main action seeking to have the tax commission enjoined from collecting back taxes. See *ante*, at 512.

In my opinion, however, the issue of prospective liability is properly presented only in the tax commission's counterclaim. It is quite possible to decide that the Tribe cannot be liable for past sales taxes which it never collected without going on to decide whether the tax commission may require the Tribe to collect state taxes on its sales in the first place. In my opinion the Court correctly reaches the issue of the Tribe's prospective liability and correctly holds that the State may collect taxes on tribal sales to non-Indians. My purpose in writing separately is to emphasize that the Court's holding

in effect rejects the argument that this governmental entity—the Tribe—is completely immune from legal process. By addressing the substance of the tax commission's claim for prospective injunctive relief against the Tribe, the Court today recognizes that a tribe's sovereign immunity from actions seeking money damages does not necessarily extend to actions seeking equitable relief.