DACOTAH PROPERTIES—RICHFIELD, INC., Plaintiff,

v.

PRAIRIE ISLAND INDIAN COMMUNITY d/b/a Treasure Island Casino and Bingo, Defendant and Third-Party Plaintiff, Appellant,

v.

Brent JOHNSON, et al., Third-Party Defendants/Counterclaimants, Respondents.

Brent JOHNSON, Third–Party Defendant/Counterclaimant/Third–Party Plaintiff,

v.

PRAIRIE ISLAND INDIAN COMMUNITY d/b/a Treasure Island Casino and Bingo, et al., Third–Party Defendants.

No. C4–94–626.

Court of Appeals of Minnesota.

Aug. 2, 1994.

Review Granted Sept. 28, 1994.

Brian B. O'Neill, Richard A. Duncan, Thomas S. Schroeder, Todd D. Steenson, Faegre & Benson, Minneapolis, and Peter T. Poncelet, Welch, for appellant.

Ronald H. Usem, Craig D. Greenberg, Huffman, Usem, Saboe, Crawford & Greenberg, P.A., Minneapolis, for respondents.

Considered and decided by DAVIES, P.J., and LANSING and FORSBERG, JJ.

## OPINION

LANSING, Judge.

This appeal presents questions of sovereign immunity and subject matter jurisdiction in litigation involving business transactions of a Native American community. The district court converted the community's motion to dismiss to one for summary judgment, identified genuine issues of material fact, and denied the motion. We affirm the denial of the motion but modify the judgment by holding that the disputed issues are resolved by application of law.

## FACTS

The Prairie Island Indian Community (Community) is organized under both a federally recognized constitution and bylaws, and a federally recognized corporate charter. The constitution provides that the community council, the governing body of the Community, has the power "[t]o manage all economic affairs and enterprises of the Community in accordance with the terms of a charter * * *." The charter provides that the Com-

munity has the power "[t]o sue and to be sued in courts of competent jurisdiction within the United States * * *."

The Community contracted with Brent Johnson for his employment and for the purchase of assets of Johnson's business, Mainstreet Ventures Holdings, Inc. d/b/a Winning Ways Tours, a company that arranged bus tours to casinos, including Treasure Island Casino & Bingo, which the Community owns. The agreement contained a limited waiver of sovereign immunity "for the enforcement of the compensation and severance provisions" of the agreement. Two months after entering this agreement, the Community discharged Johnson.

After the discharge a commercial property lessor sued the Community for breach of an oral lease for office space. The Community brought a third-party claim against Johnson, alleging that the lease was Johnson's responsibility. Johnson counterclaimed for breach of his employment contract, common law and statutory misrepresentation, unlawful restraint of trade, deceptive trade practices, and violation of the Minnesota Human Rights Act. The Community then filed a motion to dismiss based on sovereign immunity and a lack of subject matter jurisdiction. Except for that part relating to the employment contract claim, the Community appeals the district court's denial of the motion.

### ISSUES

I. Did the Prairie Island Indian Community waive its sovereign immunity?

II. Provided the Prairie Island Indian Community waived its sovereign immunity, can Minnesota apply its state statutory law to the Community's activities that extend beyond reservation boundaries?

### ANALYSIS

■ Native American communities have a common-law immunity from suit similar to that accorded sovereign powers. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978). This immunity bars suits against Native American communities absent a clear waiver of immunity by the community or by a congressional act. *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe,* 498 U.S. 505, 509, 111 S.Ct. 905, 909, 112 L.Ed.2d 1112 (1991). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *Santa Clara,* 436 U.S. at 58, 98 S.Ct. at 1677. This requirement advances the " 'overriding goal' of encouraging tribal self-sufficiency and economic development." *See Oklahoma,* 498 U.S. at 910, 111 S.Ct. at 910; *see also American Indian Agric. Credit v. Standing Rock Sioux Tribe,* 780 F.2d 1374, 1378 (8th Cir.1985) ("Indian tribes long have structured their many commercial dealings upon the justified expectation that absent an express waiver their sovereign immunity stood fast.").

■ If a Native American community's sovereign immunity stays intact, a court lacks power to hear or decide the litigation. *See Puyallup Tribe, Inc. v. Washington Dep't of Game,* 433 U.S. 165, 172, 97 S.Ct. 2616, 2621, 53 L.Ed.2d 667 (1977) ("Absent an effective waiver or consent, it is settled that a state court may not exercise jurisdiction over a recognized Indian tribe."). Although sovereign immunity is jurisdictional in nature, it operates essentially as a defense. *Krieg v. Prairie Island Dakota Sioux,* 21 F.3d 302, 304 (8th Cir.1994).

In concluding that there were genuine issues of material fact precluding summary judgment, the district court drew a distinction between the Community's governmental and corporate capacities. The Indian Reorganization Act of 1934 allows Native American communities to organize in two different ways: (1) by adopting a tribal constitution under section 16 of the Act, *see* 25 U.S.C. § 476; and (2) by incorporating pursuant to a corporate charter under section 17 of the Act, *see* 25 U.S.C. § 477. A section 16 constitutional entity and section 17 corporate entity are generally considered distinct organizations. *Ramey Constr. v. Apache Tribe,* 673 F.2d 315, 320 (10th Cir.1982). The Department of the Interior has recognized that a section 16 entity *"may have as broad or broader economic powers "* than its business counterpart, acting under section 17. *See Timber as a Capital Asset of the Blackfeet Tribe,* Op. No. M–36545 (Dep't Interior Dec.

16, 1958) (emphasis added), *quoted in S. Unique v. Gila River Pima–Maricopa*, 138 Ariz. 378, 674 P.2d 1376, 1382 (App.1983).

A "sue and be sued" clause in a tribal corporate charter is an express waiver of sovereign immunity. *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 874 F.2d 550, 552 (8th Cir.1989); *see also Duluth Lumber & Plywood v. Delta Dev.*, 281 N.W.2d 377, 384 (Minn.1979) (presence of "sue and be sued" clause in ordinance creating housing authority constituted waiver); *McCarthy & Assoc. v. Jackpot Junction Bingo Hall*, 490 N.W.2d 156, 157–58 (Minn.App.), *pet. for rev. denied* (Minn. Nov. 17, 1992); *Fontenelle v. Omaha Tribe*, 430 F.2d 143, 147 (8th Cir.1970). But because of the distinction between an entity organized under a corporate charter and one organized under a constitution, a "sue and be sued" clause in a corporate charter does not waive immunity for actions taken by a Native American community in its governmental capacity. *Atkinson v. Haldane*, 569 P.2d 151, 174–75 (Alaska 1977). Nonetheless, if a Native American community mixes its use of governmental and corporate powers, it may be deemed to have waived immunity by virtue of a "sue and be sued" clause in its corporate charter. *See Martinez v. Southern Ute Tribe*, 150 Colo. 504, 374 P.2d 691, 694 (1962) (finding blanket waiver when a Native American community refers to both its governmental and corporate powers in the language introducing the "sue and be sued" clause in the corporate charter).

Although the Prairie Island Community is organized under both a constitution and a charter, the Community's acts at issue here could not reasonably be viewed as governmental acts taken under the constitution alone. The constitution gives the Community council, the governing body of the Community, the power "[t]o manage *all* economic affairs and enterprises of the Community *in accordance with the terms of the charter* * * *." (Emphasis added). The corporate charter gives the Community power "[t]o sue and to be sued in courts of competent jurisdiction within the United States * * *." The charter also gives the Community power "to make and perform contracts and agreements of every description * * *." The issues in this lawsuit stem from the making and performance of an employment agreement that is indisputably an economic endeavor of the Community.

The interaction with Johnson is no less an economic endeavor because the Community's resolution authorizing the employment agreement refers to the constitution. This argument by the Community ignores the constitutional provision that specifically states that economic affairs are handled in accordance with the charter.

We also reject the Community's argument that a pledge or assignment of income or chattels must be established as a precondition of a waiver. The "sue and be sued" clause limits the power to levy a judgment, lien, or attachment upon the property of the Community to income or chattels specially pledged or assigned; however, this limitation affects only the enforcement of a judgment, not whether there is immunity in the first instance. *See McCarthy*, 490 N.W.2d at 159.

In concluding that there is no genuine issue of fact on the capacity in which the Community acted, we do not attach much significance to the use of the corporate name rather than the slightly divergent constitutional name in the employment agreement. But there is some probative value in Johnson's argument that the Community distributes corporate dividends under a distribution plan contained in its charter. The Community counters that the Indian Gaming Regulatory Act allows payments to members of a Native American community out of net revenues from the casino. *See* 25 U.S.C. § 2710(b)(3) (1988). Payments can be made under the Act, however, only if the Native American community has prepared a plan to allocate revenues to authorized uses. *See id.* § 2710(b)(3)(A). The plan for the distribution of corporate dividends set forth in the charter appears to satisfy the Act. The Community does not contend a plan exists outside the charter that governs payments, and the payments appear to be evidence of corporate activity.

The second area in which the district court identified a fact issue is whether a separate limited waiver in Johnson's employment

agreement applies to Johnson's claims. The Community argues that the limited waiver in the employment agreement should be construed strictly and does not affect any claim other than Count I, the employment contract claim.

Contractual waivers of sovereign immunity must be construed strictly in favor of the sovereign. *United States v. Nordic Village, Inc.*, — U.S. —, —, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992). A Native American community can effect a limited waiver of immunity. *See Tibbetts v. Leech Lake Reserv. Bus.*, 397 N.W.2d 883, 885–86 (Minn.1986).

The employment agreement contained the following waiver:

12. SOVEREIGN IMMUNITY. Nothing in this Agreement shall be construed or interpreted to effect a waiver of sovereign immunity other than a limited waiver of the Employer's sovereign immunity for the enforcement of the compensation and severance provisions of this Agreement. The Employer hereby expressly waives its immunity from suit for this stated purpose.

This waiver unambiguously limits its scope to the compensation and severance portions of the agreement, and we decline to consider extrinsic evidence to broaden the scope of the waiver. *See Metropolitan Sports Facility Comm'n v. General Mills*, 470 N.W.2d 118, 123 (Minn.1991) (when terms of contract are unambiguous, court must look solely to the language of the contract itself). We agree that the Community did not waive its immunity to Counts II through VI of the counterclaim by agreeing to the waiver in the employment agreement.

But we do not accept the Community's argument that the limited contractual waiver in the employment agreement constricts the general waiver found in the "sue and be sued" clause. The adoption of a limited waiver following the adoption of a general waiver does not negate that part of the general waiver that extends beyond the terms of the limited waiver. Both waivers are clearly expressed and both operate. *See Santa Clara Pueblo*, 436 U.S. at 58, 98 S.Ct. at 1677 (waiver must be clearly expressed);

*see also Rosebud*, 874 F.2d at 552 (recognizing multiple waivers as found in corporate charter and through recoupment doctrine).

The last area in which the district court identified a fact issue is whether the Community waived its immunity by filing a third-party complaint against Johnson. The United States Supreme Court has held that a Native American community does not waive its immunity to suit by bringing an action, even when counterclaims brought against it are compulsory. *Oklahoma*, 498 U.S. at 509, 111 S.Ct. at 909; *see also United States v. United States Fidelity & Guar.*, 309 U.S. 506, 513, 60 S.Ct. 653, 656–57, 84 L.Ed. 894 (1940). The limited exception for claims brought under the recoupment doctrine does not apply. *See Rosebud*, 874 F.2d at 552 (acknowledging waiver of sovereign immunity to claims that fall within recoupment doctrine). Johnson concedes that the recoupment issue was not argued below. Consequently, that theory cannot be used to show a voluntary waiver of immunity. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (limiting review to issues raised in the district court).

There are no disputed issues of material fact that would affect the determination of whether the Community waived its sovereign immunity. The "sue and be sued" clause in the Community's charter applies to the economic dealings with Johnson, and the district court correctly denied the Community's motion to dismiss based on sovereign immunity and lack of subject matter jurisdiction.

## II

The Community further argues that, as a federally recognized Indian tribe, the Community is not subject to state civil regulatory laws and all counts that rely on statutory regulations should be dismissed.

Native Americans "going beyond reservation boundaries have generally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the state." *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148–49, 93 S.Ct. 1267, 1270, 36 L.Ed.2d 114 (1973) (discussing regulation of activities of Native American community); *see also*

*Duluth Lumber,* 281 N.W.2d at 382; *R.J. Williams Co. v. Fort Belknap Hous. Auth.,* 719 F.2d 979, 984–85 (9th Cir.1983), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985); *R.C. Hedreen Co. v. Crow Tribal Hous. Auth.,* 521 F.Supp. 599, 606–07 n. 4 (D.Mont.1981); *cf. Padilla v. Pueblo of Acoma,* 107 N.M. 174, 179–80, 754 P.2d 845, 850–51 (1988) (analyzing exercise of jurisdiction over a Native American community for off-reservation activities as a matter of comity), *cert. denied,* 490 U.S. 1029, 109 S.Ct. 1767, 104 L.Ed.2d 202 (1989). *See generally* Felix S. Cohen, *Handbook of Federal Indian Law* 348–49 (1982 ed.).

A state has less power to apply its laws to activities within reservation boundaries. *See Williams v. Lee,* 358 U.S. 217, 220, 79 S.Ct. 269, 271, 3 L.Ed.2d 251 (1959). Yet, even within reservation boundaries, "state laws may be applied unless such application would interfere with reservation self-government or would impair a right granted or reserved by federal law." *Mescalero,* 411 U.S. at 148, 93 S.Ct. at 1270; *see also* 18 U.S.C. § 1162 (1988); 28 U.S.C. § 1360 (1988) (current version of Public Law 280, giving some states, including Minnesota, limited criminal and civil jurisdiction over actions arising within the areas of Indian country).

Although a state can regulate the activities of a Native American community that extend beyond reservation boundaries, this application of state law is still dependent on a Native American community's waiver of its immunity or Congressional consent. *See Puyallup,* 433 U.S. at 171–73, 97 S.Ct. at 2621; *see also Santa Clara Pueblo,* 436 U.S. at 58–60, 98 S.Ct. at 1677 (absent clear waiver of sovereign immunity, a Native American community is immune from suit).

Johnson's counterclaim alleges common law and statutory claims that the Community fraudulently misrepresented facts to induce Johnson to sell Winning Ways and enter into the employment agreement. Additional counts allege discrimination under the Minnesota Human Rights Act, restraint of trade, and deceptive trade practices. The discrimination and restraint of trade counts appear to be based on the Community's alleged actions in discouraging Johnson from bringing minority individuals to the casinos. Johnson also claims discrimination based on his own race.

All of the counts in Johnson's counterclaim allege actions that extend beyond reservation boundaries. At least some contract negotiations took place off the reservation, including as far away as Las Vegas, Nevada. The employment agreement itself states that Johnson's "duties shall be rendered at 1401 West 76th Street, Suite 200, Minneapolis, Minnesota 55423 * * *." The Community does not dispute that this location is off the reservation. Johnson's duties involved developing and managing tour and travel operations of the casino, activities that would occur outside reservation lands.

Because the Community's activities at issue here extend beyond the reservation and because the Community waived its sovereign immunity, state laws apply. The Community's reliance on *Bryan v. Itasca County, Minn.* 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976) and *Tibbetts v. Leech Lake Reserv. Bus.,* 397 N.W.2d 883 (Minn. 1986) is misplaced. *Bryan* deals with the application of state law under Public Law 280, which is a special grant of jurisdiction to state courts. Public Law 280 applies, however, only to activities within Indian country and does not apply to Native American communities themselves. *See* 18 U.S.C. § 1162; 28 U.S.C. § 1360; *Bryan,* 426 U.S. at 388, 96 S.Ct. at 2111. *Tibbetts* is also inapposite because in *Tibbetts* the community had not waived its sovereign immunity to the workers' compensation claim at issue. *Tibbetts,* 397 N.W.2d at 886–89. The facts of this case are distinguishable because there was a valid waiver.

## DECISION

We affirm the district court's denial of summary judgment as modified. We hold that the Community waived its sovereign immunity through the "sue and be sued" clause in its corporate charter, that as a matter of law the contractual waiver does not restrict the general waiver, and that the Community did not waive its immunity to suit by bringing a third party claim against Johnson. We also hold that, by reason of the

Community's off-reservation activities and its waiver of sovereign immunity as to economic affairs, the Community is subject to state statutory laws.

**Affirmed as modified.**