**Theodore E. HEGNER, Respondent,**

v.

**Fred DIETZE, et al., Appellants.**

No. CX–94–839.

Court of Appeals of Minnesota.

Dec. 13, 1994.

Lawrence J. Hayes, Jr., Eagan, for appellants.

Roger T. Sahr, Craig Peterson, Minneapolis, for respondent.

Considered and decided by SCHUMACHER, P.J., and FORSBERG and NORTON, JJ.

## OPINION

NORTON, Judge.

Appellants, a Native American community and the human resources manager at the community-owned and managed casino, appeal from the district court's denial of their motions for summary judgment and dismissal for lack of jurisdiction. They contend that the district court erred in concluding that genuine issues of material fact exist over their immunity to suit. They also claim that the district court erred in determining that genuine issues of material fact exist on the merits of respondent's claim. We determine that the community is immune from suit and remand for further proceedings against the casino's human resources manager.

## FACTS

Appellant Prairie Island Indian Community (the Community) is organized under a federally-recognized constitution and bylaws and a federally-recognized corporate charter; the Secretary of the Interior approved both in 1936 and 1937, respectively. The community government, referred to as the Community Council, owns and operates Treasure Island Casino and Bingo, a gaming facility on the Community's reservation. Appellant Fred Dietze is the human resources manager at Treasure Island Casino.

In April 1991, Treasure Island Casino hired respondent Theodore Hegner as a security guard. The casino discharged Hegner on April 2, 1992 after a customer complained that Hegner had made a vulgar comment to her. Hegner and the customer had previously had a romantic relationship in the winter of 1992. The casino reviewed Hegner's past performance and performed an investigation, taking statements from employees and two other customers, before it discharged Hegner.

When Hegner applied for unemployment benefits, the casino's personnel administrator, Jeannette Lehman, sent the Department of Economic Security a letter in which she stated:

> Mr. Hegner was the subject of a customer complaint on March 30, 1992 in which he insulted her and used vulgar language to her. This was considered to be sexual harassment of a customer and grounds for immediate termination.

The Department of Economic Security granted Hegner's application for benefits despite the casino's allegation of cause for terminating his employment.

In July 1992, St. Croix Casino hired Hegner as a blackjack dealer. On his employment application, Hegner did not answer a question asking why he had left his previous

employment. In November 1992, the human resources director at St. Croix Casino questioned Hegner about his employment history. Approximately one month later, the human resources director fired Hegner after explaining that he had talked to Dietze and no longer believed Hegner's story about his discharge from Treasure Island Casino.

Hegner appealed his termination to the tribal council operating St. Croix Casino. Hegner stated in his deposition that at the hearing before the tribal council, the St. Croix Casino human services director explained that Dietze had told him that Treasure Island had terminated Hegner's employment for "sexual harassment and for misconduct." The tribal council denied Hegner's appeal. Hegner alleges he has not been able to obtain comparable employment since his discharge from St. Croix Casino.

Hegner brought this action against Dietze and the Community for defamation. The Community filed a motion to dismiss for lack of jurisdiction based on its sovereign immunity. The district court denied this motion because of disputed facts. The Community and Dietze later filed a motion for summary judgment on the merits and again moved to dismiss based upon sovereign immunity. They appeal the district court's denial of their motions for dismissal and for summary judgment.

## ISSUE

Do the doctrines of sovereign immunity and executive immunity bar respondent's defamation action against his former employer, Prairie Island Indian Community, and the manager of human resources at the Community's casino?

## ANALYSIS

Hegner contends that this court should dismiss this appeal because the district court's order denying appellants' motions for dismissal and summary judgment are not appealable under Minn.R.Civ.P. 103.03. We disagree. Orders denying a mo-

tion to dismiss for lack of jurisdiction and a motion for summary judgment based upon claims of sovereign and official immunity are immediately appealable. *McGovern v. City of Minneapolis*, 475 N.W.2d 71, 72–73 (Minn. 1991). The court's denial of appellant's motion for summary judgment on the merits of Hegner's defamation claim is not appealable, however. Minn.R.Civ.App.P. 103.03 (defining appealable orders). Based upon our review of the record, we discern no reason to extend discretionary review; we will not question the district court's discretion in denying summary judgment at this stage of the proceedings. *See* Minn.R.Civ.App.P. 103.04 (court of appeals "may review any other matter as the interest of justice may require").

## 1. Sovereign Immunity

Indian tribes are "domestic dependent nations," which exercise inherent sovereign authority over their members and territories. *Cherokee Nation v. Georgia*, 5 Pet. 1, 17, 8 L.Ed. 25 (1831). Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677 [56 L.Ed.2d 106] (1978).

*Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509, 111 S.Ct. 905, 909, 112 L.Ed.2d 1112 (1991). Congress has repeatedly reiterated its approval of the doctrine of Indian tribal sovereign immunity. *Id.* at 511–13, 111 S.Ct. at 910 (citing, *e.g.*, Indian Financing Act of 1974, 25 U.S.C. §§ 1451–1543; Indian Self-Determination and Education Assistance Act, 25 U.S.C. §§ 450–450n). Acts of Congress reflect its desire to promote the "goal of Indian self-government, including its 'overriding goal' of encouraging tribal self-sufficiency and economic development." *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 216, 107 S.Ct. 1083, 1092, 94 L.Ed.2d 244 (1987).

Indian tribes long have structured their many commercial dealings upon the justified expectation that absent an express

waiver their sovereign immunity stood fast.

*American Indian Agric. Credit Consortium, Inc. v. Standing Rock Sioux Tribe,* 780 F.2d 1374, 1378 (8th Cir.1985).

■ Accordingly, absent an effective waiver or consent, the state court lacks jurisdiction to hear or decide Hegner's claim against the Community. *See Puyallup Tribe, Inc. v. Washington Dept. of Game,* 433 U.S. 165, 172, 97 S.Ct. 2616, 2621 (1977). The tribe's waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *Santa Clara Pueblo,* 436 U.S. at 58, 98 S.Ct. at 1677 (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969)).

This court recently released an opinion concerning appellant Community and its immunity to suit under the doctrine of sovereign immunity. *Dacotah Properties–Richfield, Inc. v. Prairie Island Indian Community,* 520 N.W.2d 167 (Minn.App.1994), *pet. for rev. granted* (Minn. Sept. 28, 1994). Under the circumstances in that case, this court held that the Community had acted under its federally-recognized corporate charter when it entered into a contract related to its casino business and had thus expressly waived its sovereign immunity pursuant to a "sue and be sued" clause in that charter. Hegner argues that *Dacotah Properties* compels a conclusion here that the Community has waived its sovereign immunity. We disagree.

*Dacotah Properties* involved issues arising from a written contract between the Community Council and Brent Johnson for his employment and for the purchase of the assets of Johnson's bus tour business. *Id.* at 169. Johnson's employment and tour business were related to the Community's operation of Treasure Island Casino. *Id.* We determined that the complained-of acts at issue in *Dacotah Properties* could not be viewed as governmental acts of the Community under the constitution alone because the Community's constitution gave the governing body of the Community the power "[t]o manage *all*

economic affairs and enterprises of the Community *in accordance with the terms of the charter." Id.* at 170 (referring to Constitution and Bylaws of the Prairie Island Indian Community in Minnesota, article V, section 1(f)). We then looked to the Community's corporate charter, which gave the Community the power "[t]o sue and to be sued in courts of competent jurisdiction within the United States," and "to make and perform contracts and agreements of every description." *Id.* We determined that the "sue and be sued" clause in the charter effected an "express waiver" of immunity that applied to the Community's "economic endeavors" and any issues arising from them. *Id.* at 170. Unlike the present case, however, the claims in *Dacotah Properties* stemmed directly from the formation and performance of the Community's contract to purchase Johnson's tour business, an agreement that was indisputably an economic dealing between the parties.

The Community contends that it operates the casino pursuant to the following sections of the tribal constitution:

The Community Council shall exercise the following powers * * *:

(i) To safeguard and promote the peace, safety, morals, and general welfare of the Community by regulating the conduct of trade and the use and disposition of property upon the reservation.

\* \* \* \* \* \*

(n) To charter subordinate organizations for economic purposes and to regulate the activities of all such organizations under ordinances which shall be subject to review by the Secretary of the Interior.

Constitution and Bylaws of the Prairie Island Indian Community in Minnesota, article V, section 1(i) and (n). We determined in *Dacotah Properties,* however, that the Community Council acts under section 1(f) of the Community constitution when the community makes and performs under an employment contract concerning its casino. Even so, there can be no dispute here that Hegner's claim of defamation is only remotely related to his employment contract.

The alleged defamatory statement was made long after the Community terminated its employment relationship with Hegner. As Hegner conceded, he has not made a claim for breach of contract. Thus, because the complaint here is not contract-based, unlike *Dacotah Properties*, we hold that the Community is immune from suit. This holding is consistent with cases directing that a waiver of sovereign immunity must be narrowly construed. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, ——, 112 S.Ct. 1011, 1014–15, 117 L.Ed.2d 181 (1992) (court must construe government's consent to be sued strictly in favor of the sovereign); *Santa Clara Pueblo*, 436 U.S. at 58, 98 S.Ct. at 1677 (tribe's waiver of sovereign immunity must be "unequivocal"); *S. Unique, Ltd. v. Gila River Pima–Maricopa Indian Community*, 138 Ariz. 378, 674 P.2d 1376, 1381, 1382–83 (Ct.App.1983) (waiver of immunity interpreted "restrictively against the claimant"; subordinate economic entity of the tribe acted under the tribe's constitution and was not subject to "sue and be sued" clause in corporate charter), *pet. for rev. denied* (Ariz. Jan. 4, 1984).

### 2. Executive Immunity

 Sovereign immunity extends to tribal officials acting in their official capacity and within their scope of authority. *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 479–80 (9th Cir.1985). Dietze claims that he has an absolute privilege to make a defamatory statement while acting in his alleged capacity as an official of the sovereign community. *See id.* (judges of tribal court absolutely immune from suit); *Davis v. Littell*, 398 F.2d 83, 85 (9th Cir.1968) (general counsel of tribe absolutely immune from suit), *cert. denied*, 393 U.S. 1018, 89 S.Ct. 621, 21 L.Ed.2d 562 (1969); *White Mountain Apache Indian Tribe v. Shelley*, 107 Ariz. 4, 8, 480 P.2d 654, 658 (1971) (general counsel and general manager of subordinate economic organization of tribe absolutely immune from suit); *Diver v. Peterson*, 524 N.W.2d 288, 290–91 (Minn.App.1994) (Indian tribe's sovereign immunity extended to tribe's attor-

ney; attorney had absolute immunity to publish defamatory statement made in course of duties as tribal spokesperson); *see also Johnson v. Dirkswager*, 315 N.W.2d 215, 220 (Minn.1982) (Commissioner of Department of Public Welfare had an absolute privilege to publish defamatory statement).

Although, at his deposition, Dietze described his employment as manager of human resources and his relationship to the Community Council, we discern no error in the district court's determination that a factual dispute remains over whether Dietze's position in the Community is sufficient to provide him with immunity and/or an absolute privilege to make the alleged defamatory statement.

### DECISION

We narrowly construe the Community's waiver of sovereign immunity and hold that the Community is immune from Hegner's defamation suit. We affirm the district court's determination that disputed facts preclude summary judgment on Dietze's claim that he is either immune from suit or had an absolute privilege to publish the alleged defamatory statement.

**Affirmed in part, reversed in part and remanded.**