**Albion KLAMMER, Respondent,**

v.

**LOWER SIOUX CONVENIENCE STORE, Appellant.**

No. C6–95–279.

Court of Appeals of Minnesota.

Aug. 1, 1995.

Albion Klammer, Watertown, pro se.

John E. Jacobson, Joseph F. Halloran, Jacobson, Buffalo, Schoessler, Magnuson, Ltd., Minneapolis, for appellant.

Considered and decided by KLAPHAKE, P.J., and NORTON and SCHULTZ,* JJ.

## OPINION

NORTON, Judge.

This appeal arises out of a conciliation court claim for damages resulting from an incident that occurred on the premises of appellant, a business of the Lower Sioux Indian Community. The conciliation court granted respondent a default judgment when appellant failed to appear in that action. Appellant demanded removal to the district court and moved to dismiss on the basis of sovereign immunity and on the basis of comity because respondent had not exhausted remedies in tribal court. The district court

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

denied appellant's motion to dismiss on both bases. We reverse because the district court should have required exhaustion of remedies in tribal court.

## FACTS

Respondent Albion Klammer, a non-Indian, sued appellant Lower Sioux Convenience Store (the Convenience Store) in conciliation court for property damage. Klammer alleged that a ruptured hose at the Convenience Store sprayed fuel over himself and the passengers inside his car. When the Convenience Store did not appear in conciliation court, the court entered a default judgment of $4,356.57 in favor of Klammer.

The Lower Sioux Convenience Store is a business of the Lower Sioux Indian Community (the Community). The Community is a federally-recognized Indian tribe occupying an Indian reservation located near Morton, Minnesota (the reservation). The Convenience Store is located on the reservation and is adjacent to the Community's casino, Jackpot Junction.

The Community is organized under a federally-recognized constitution and by-laws pursuant to section 16 of the Indian Reorganization Act (IRA), 25 U.S.C.A. § 476 (West Supp.1995). The Community also has a federally-recognized corporate charter pursuant to section 17 of the IRA, 25 U.S.C.A. § 477 (West Supp.1995). The charter provides that the Community has the "corporate" power "[t]o sue and be sued in courts of competent jurisdiction within the United States." Corporate Charter of the Lower Sioux Indian Community in the State of Minnesota, § 5(i). The Community's constitution does not contain a "sue and be sued" clause.

The Community has a tribal court that operates in accordance with the Lower Sioux Indian Community in Minnesota Judicial Code. The area director of the Bureau of Indian Affairs approved the Community's judicial code on November 18, 1993.

Upon de novo review of Klammer's claim, the district court relied on this court's decision regarding a different Indian tribe/community in *Dacotah Properties–Richfield, Inc. v. Prairie Island Indian Community*, 520 N.W.2d 167 (Minn.App.1994), *pet. for rev. granted* (Minn. Sept. 28, 1994), *and appeal dismissed* (Minn. Feb. 7, 1995), and determined that the Community had waived its sovereign immunity from unconsented suit. The district court here held that the Community had "mixed governmental and corporate powers of its charter and constitution as in *Dacotah Properties*." The district court denied the Community's motion to remove Klammer's case and to direct that Klammer first exhaust his remedies in tribal court before seeking relief in state court. The district court held that the exercise of state jurisdiction would not interfere with the Community's self-government, nor would it impinge on its sovereignty. The court determined that a grant of comity to the tribal court would deny Klammer an opportunity to be heard in any court.

## ISSUE

Is exhaustion of remedies in tribal court required here?

## ANALYSIS

The Convenience Store argues that Klammer should have first brought his claim in tribal court. In two leading cases, the United States Supreme Court determined that nonexhaustion of remedies in a tribal court bars consideration of the merits of a case in federal court. *See Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 16, 107 S.Ct. 971, 976, 94 L.Ed.2d 10 (1987); *National Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845, 856–57, 105 S.Ct. 2447, 2454, 85 L.Ed.2d 818 (1985). The exhaustion requirement is a matter of comity; it is not a jurisdictional prerequisite. *Iowa Mut.*, 480 U.S. at 16 n. 8, 107 S.Ct. at 976 n. 8; *see also Brown v. Washoe Hous. Auth.*, 835 F.2d 1327, 1328 (10th Cir.1988) ("exhaustion of tribal remedies is required as a matter of comity, not because there is no subject matter jurisdiction").

The federal policy promoting tribal self-government and noninterference with tribal sovereignty and self-government is at the root of the exhaustion of tribal court remedies rule. *See Iowa Mut.*, 480 U.S. at 14–16, 107 S.Ct. at 975–76. The Supreme Court has

repeatedly recognized the longstanding federal policy of encouraging tribal self-government. *See, e.g., id.* at 14, 107 S.Ct. at 975; *Three Affiliated Tribes v. Wold Eng'g,* 476 U.S. 877, 890, 106 S.Ct. 2305, 2313, 90 L.Ed.2d 881 (1986); *Williams v. Lee,* 358 U.S. 217, 220–21, 79 S.Ct. 269, 270–71, 3 L.Ed.2d 251 (1959).

The Supreme Court has stated that the general comity requirement does not apply where:

> assertion of tribal jurisdiction "is motivated by a desire to harass or is conducted in bad faith," or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction.

*National Farmers Union,* 471 U.S. at 856 n. 21, 105 S.Ct. at 2454 n. 21 (quoting *Juidice v. Vail,* 430 U.S. 327, 338, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (1977)). Various circuit courts disagree about how broadly to apply the exhaustion requirement and how the exceptions listed in *National Farmers Union* should be applied. For a discussion of this issue and a review of the exceptions to exhaustion being carved out in the various circuits, see Timothy W. Joranko, *Exhaustion of Tribal Remedies in the Lower Courts After National Farmers Union and Iowa Mutual: Toward a Consistent Treatment of Tribal Courts by the Federal Judicial System,* 78 Minn.L.Rev. 259 (1994).

The Supreme Court has indicated that the exceptions to comity are narrow. In a case concerning exhaustion of remedies related to state and federal court habeas corpus proceedings, the Supreme Court cited *Iowa Mut.* and *National Farmers Union* as examples where it "treat[s] nonexhaustion as an *inflexible bar* to consideration of the merits" of a case in federal court. *Granberry v. Greer,* 481 U.S. 129, 131 & n. 4, 107 S.Ct. 1671, 1673 & n. 4, 95 L.Ed.2d 119 (1987) (emphasis added).

The district court here stated that its refusal to dismiss the state court proceeding "would not interfere with the tribal counsel's self-government or impair a right granted or reserved to reservation self-government by federal law." The Convenience Store argues

that this statement is erroneous because the court's decision undermines the role of the tribal court, a vital part of the Community's governance of reservation affairs. We agree. "Tribal courts play a vital role in tribal self-government, and the Federal Government has consistently encouraged their development." *Duncan Energy Co. v. Three Affiliated Tribes,* 27 F.3d 1294, 1299 (8th Cir.1994) (citing *Iowa Mut.,* 480 U.S. at 14–15, 107 S.Ct. at 975–76). "Civil jurisdiction over tribal-related activities on reservation land presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or by federal statute." *Id.* (citing *Iowa Mut.,* 480 U.S. at 18, 107 S.Ct. at 977–78). The Supreme Court has recognized that "unconditional access to the federal forum would place it in direct competition with the tribal courts, thereby impairing the latter's authority over reservation affairs." *Iowa Mut.,* 480 U.S. at 16, 107 S.Ct. at 976. We must acknowledge that unconditional access to state court would similarly impair the tribal court's authority.

The district court explained that its denial of comity would not interfere with the tribal court and the Community's ability to self-govern because the tribal court lacked jurisdiction to hear the suit and the Community had waived its sovereign immunity from suit. But, as the Convenience Store points out, the policy of supporting tribal self-government and self-determination favors a rule that will provide the tribal court, whose jurisdiction is being challenged, the first opportunity to evaluate the factual and legal bases for that challenge. *Id.; National Farmers Union,* 471 U.S. at 856–57, 105 S.Ct. at 2454. Federal courts apply this rule even when, similar to here, no action is yet pending in tribal court. *See, e.g., Duncan Energy Co.,* 27 F.3d at 1300–01, (Eighth Circuit reversed grant of summary judgment to oil company and held that oil company challenging tribe's taxation and employment authority must first bring action in tribal court and exhaust remedies in that court); *United States ex rel. Kishell v. Turtle Mountain Hous. Auth.,* 816 F.2d 1273, 1276 (8th Cir.1987) (land dispute; holding that party who brought suit in federal court, rather than tribal court, must first

exhaust remedies in tribal court); *Weeks Constr. Inc. v. Oglala Sioux Hous. Auth.*, 797 F.2d 668, 674 (8th Cir.1986) (holding that district court cannot assert diversity jurisdiction over case brought by non-Indian against tribal housing authority for acts occurring on reservation until person first gives tribal court opportunity to determine its jurisdiction to hear case). The district court's determination of the jurisdictional issues in the first instance here directly challenges the tribal court's authority and the Community's ability to govern occurrences on the reservation.

The district court determined the issue of tribal court jurisdiction upon its analysis of sovereign immunity. The district court commented that the Community's judicial code provides that the tribal court follows the principle of general immunity except where the Community has explicitly waived immunity by resolution. The court noted that the Community, by resolution 39–93, had waived immunity for "actions to enforce contracts between the Community, its businesses, its officers, employees and agents and any person or entity." The district court concluded that since Klammer's cause of action was based on negligence claims and not contract claims, the tribal court would determine: (1) that the Convenience Store is a Community business immune from Klammer's suit; and (2) that the tribal court lacks jurisdiction to hear Klammer's suit because the Community government had not granted the tribal court jurisdiction.[1]

The district court determined that this court's decision in *Dacotah Properties* compelled a contrary conclusion, that the Community here had waived its sovereign immunity. Even though the Convenience Store provided evidence that the Community operated it as a section 16 tribal government business rather than a section 17 corporate entity, the district court determined that this court's analysis of a similar tribal constitution and charter in *Dacotah Properties* compelled a conclusion that the Community here oper-

ated its Convenience Store under its charter and that the Convenience Store was subject to suit according to a "sue and be sued" clause contained in the Community charter.

Because there are significant differences between *Dacotah Properties* and the instant case, we believe that the district court should have dismissed Klammer's state court suit and required a determination of the jurisdiction and sovereign immunity issues in tribal court in the first instance. Such a result is consistent with the Supreme Court's directive, as recognized by the circuit courts, that the tribal court, whose jurisdiction is being questioned, must first have the opportunity to evaluate the factual and legal bases and determine its jurisdiction. *See, e.g., Duncan Energy Co.*, 27 F.3d at 1299 ("examination of tribal sovereignty and jurisdiction should be conducted in the first instance by the tribal court"). We must heed the Supreme Court's direction that

the existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions.

We believe that examination should be conducted in the first instance in the Tribal Court itself.

*National Farmers Union*, 471 U.S. at 855–56, 105 S.Ct. at 2453–54.

We disagree with the district court's determination that waiver of sovereign immunity is a foregone conclusion here. Although the Community's constitution and charter contain provisions that are identical to the constitution and charter of the Prairie Island Indian Community in *Dacotah Properties*, a determination of sovereign immunity does not rest merely upon a discovery that both charters contain identical "sue and be sued" clauses.

---

1. The district court reached this conclusion because the tribal court had reportedly dismissed an action for intentional infliction of emotional distress against another community business based upon immunity and lack of jurisdiction.

This rationale is problematic because this case is different from that prior action and a record of the tribal court decision in the prior tort action against Jackpot Junction is not before us.

As we noted in *Dacotah Properties*, the Indian Reorganization Act of 1934 (the IRA) allows American Indian communities to organize by adopting a tribal constitution under section 16 of the IRA, 25 U.S.C.A. § 476, and/or by incorporating under section 17 of the IRA, 25 U.S.C.A. § 477. *Dacotah Properties*, 520 N.W.2d at 169. A section 16 entity and a section 17 entity are generally considered distinct organizations. *See, e.g., Ramey Constr. Co. v. Apache Tribe of Mescalero Reservation*, 673 F.2d 315, 320 (10th Cir.1982) (affirming determination that contractor entered into agreement "only with the [tribe] as a constitutional entity, and not with * * * the tribal corporate entity"; "sue and be sued" clause in tribal corporate charter could not serve as waiver of sovereign immunity). As we noted in *Dacotah Properties*, "[t]he Department of the Interior has recognized that a section 16 entity '*may have as broad or broader economic powers*' than its business counterpart acting under section 17." *Id.*, 520 N.W.2d at 169 (quoting *Timber as a Capital Asset of the Blackfeet Tribe*, Op. No. M–36545 (Dep't Interior Dec. 16, 1958) (emphasis supplied in *Dacotah Properties*).

Other cases involving "sue and be sued" clauses in a tribe's corporate charter have held that the tribe could operate a business under the section 16 constitution and that such a business could be allowed the protection of sovereign immunity afforded to the tribe. *See, e.g., Parker Drilling Co. v. Metlakatla Indian Comm.*, 451 F. Supp 1127, 1131 (D.Alaska 1978) (tribe organized under section 16 and section 17 of IRA, and section 17 charter contained "sue and be sued clause"; even so, tribe could own and operate business under section 16 and, as such, state action would be precluded by sovereign immunity); *S. Unique, Ltd. v. Gila River Pima–Maricopa Indian Comm.*, 138 Ariz. 378, 384, 674 P.2d 1376, 1382 (Ct.App.1983) (Indian community organized under section 16 and 17 with a "sue and be sued clause" in community charter; farm was a subordinate entity of the community and was immune from suit), *pet. for rev. denied* (Ariz. Jan. 4,

1984). *But see Dixon v. Picopa Constr. Co.*, 160 Ariz. 251, 256–259, 772 P.2d 1104, 1109–1112 (1989) (no immunity where business was separate entity, independent from tribal control, and claim arose from off-reservation tort).

Here, the Convenience Store presented evidence that it is an arm of the tribal government; that the community operates it and other businesses as tribal governmental enterprises under a different constitutional power than the one relating to tribal charter businesses applied by *Dacotah Properties*. *Cf. S. Unique, Ltd.*, 674 P.2d at 1380 ("Community's Constitution and Bylaws * * * empower the Community Council to create and operate subordinate economic organizations" that are not subject to "sue and be sued" clause in community charter). In fact, *Dacotah Properties* made no mention of the separate constitutional power that the community has invoked here. These facts distinguish this case from *Dacotah Properties*.[2]

*Dacotah Properties* may also be distinguishable because it involved claims arising out of a contract performed off of the reservation, whereas the claim here is for property damage occurring on the reservation. *Cf. Dixon*, 772 P.2d at 1109 (business not immune from suit for off-reservation tort).

We next turn to the district court's comment that the state court and tribal court have "concurrent" jurisdiction. We assume the district court is referring to the Public Law 280 grant of state court jurisdiction over civil causes of action in Indian Country in Minnesota, except for Red Lake Reservation. Public Law 280 codified at 28 U.S.C.A. § 1360 (West 1993) (P.L. 280). Whether or not there is concurrent jurisdiction here, the law still requires that a party first seek and exhaust remedies in tribal court. *See, e.g., Iowa Mut.*, 480 U.S. at 16, 107 S.Ct. at 976 (regardless of whether federal court's jurisdiction is based upon federal question or diversity, "federal policy supporting tribal self-government directs a federal court to stay its hand" to give tribal court opportunity

---

**2.** We would expect to have a more substantial record if the issue of sovereign immunity were properly before us. But, given that the Community has presented a "colorable question" of sov-

ereign immunity, our abstention from this issue and exhaustion in tribal court is required. *Stock West Corp. v. Taylor*, 964 F.2d 912, 920 (9th Cir.1992).

to first determine its jurisdiction); *Stock West Corp. v. Taylor*, 964 F.2d 912, 920 (9th Cir.1992) (requiring exhaustion in tribal court whenever a "colorable question" of tribal jurisdiction and/or sovereign immunity is presented).

> If state-court jurisdiction over Indians or activities on Indian lands would interfere with tribal sovereignty and self-government, the state courts are generally divested of jurisdiction as a matter of federal law.

*Iowa Mut.*, 480 U.S. at 15, 107 S.Ct. at 976; *see also Duluth Lumber & Plywood Co. v. Delta Dev. Inc.*, 281 N.W.2d 377, 381 (Minn. 1979) (P.L. 280 jurisdiction, but court nevertheless recognized that state court jurisdiction over common-law dispute in Indian territory is limited by "judicially-created restrictions" of the Supreme Court and lower federal courts where civil jurisdiction to the state would undermine tribal self-government).

Finally, the district court's concern that dismissal would deny Klammer an opportunity to be heard in any court is not a valid basis for denying the Convenience Store's motion to dismiss. The record contains no evidence that the Convenience Store's assertion of tribal court jurisdiction is motivated by an improper purpose. *See National Farmers Union*, 471 U.S. at 856 n. 21, 105 S.Ct. at 2454 n. 21. (providing exceptions to exhaustion rule). Further, Klammer could seek review after exhausting his tribal court remedies. *Id.* at 857, 105 S.Ct. at 2454; *Duncan Energy Co.*, 27 F.3d at 1300 (tribal court's decision regarding jurisdiction and sovereign immunity is reviewable).

## DECISION

The district court erred in denying the Convenience Store's motion to dismiss Klammer's suit and refer him to tribal court to first exhaust his remedies there. The doctrine of exhaustion of tribal remedies articulated by the Supreme Court and the Eighth Circuit requires that the tribal court have the first opportunity to determine its jurisdiction and the issue of sovereign immunity. Ac-

cordingly, we reverse the decision of the district court and remand for dismissal.

**Reversed and remanded.**