### UNITED STATES v. CHARLES.

District Court, W. D. New York.

April 19, 1938.

George L. Grobe, U. S. Atty., of Buffalo, N. Y. (Aubrey Lawrence and C. C. Daniels, Sp. Assts. ·to Atty. Gen., of counsel), for the United States.

Nelson T. Barrett, of Buffalo, N. Y., for defendant.

BURKE, District Judge.

The defendant moves to dismiss the bill herein on the ground that it does not state facts sufficient to constitute a cause of action, and on the ground of lack of jurisdiction. The action is brought by the United States of America for and on its own behalf, and for and on behalf and as trustee and guardian of the Tonawanda Band of the Seneca Nation of Indians, to set aside a deed to the defendant pursuant to a sale ordered by the Supreme Court of the state of New York in partition proceedings with reference to certain property upon the Tonawanda Reservation. In addition to this specific purpose the action is brought by the United States to maintain its obliga-

tions to the Tonawanda Tribe of Indians as guardian under treaties, and to prevent the exercise of jurisdiction over Indian tribal affairs by the state of New York without the request of the Indian tribe involved or the acquiescence or consent of the United States.

The facts alleged in the complaint, in so far as they are material to this motion, are as· follows:

The Tonawanda Tribe of Indians was a part of the Seneca Nation which belonged to the Iroquois Confederacy, and is a separate. and distinct tribe of the Seneca Nation not bound by or subject to the charter of the Seneca Nation adopted by the Alleghany, Cattaragus, and Oil Springs bands or tribes; the Tonawanda Band, acting under and being governed by its separate tribal laws and customs. The Tonawanda Band has maintained its own tribal relations and has kept tribal affairs and property separate and distinct from any other tribe or band. The several nations of the Iroquois Confederacy and its constituent tribes, including the Tonawanda Band, hold their tribal lands in common, and are prohibited from transferring or alienating said lands without the consent of the United States, and the United States has not at any time consented to alienation of lands within the Tonawanda Reservation. The lands described in the complaint over which the dispute arose are within the boundaries of the Tonawanda Reservation. Anna Moses, a member of the Tonawanda Band, was in possession of said lands at the time of her death, which occurred during the month of June 1933. She died intestate. Thereafter a "Consolation Feast" or "Ten day Feast" was held according to the custom and usage of the Tonawanda Indians, at which the right of possession and use of the lands were duly determined, in accordance with the usage and custom of the Tonawanda Band, to vest in Gertrude Blackchief, a Tonawanda Indian, and other Tonawanda Indians. Thereafter, Gertrude Blackchief filed with the Chiefs' Council of the Tonawanda Band, in accordance with the custom and usage of the tribe, a petition for the enforcement of the determination of the "Consolation Feast" and for the purpose of evicting Ira Charles and the defendant Hattie Charles, who were adverse claimants to the said land and who claimed heirship which entitled them to the said lands. Thereafter, and. about March 17, 1934, before the Chiefs' Council had acted or had

348

had an opportunity to act on the petition of Gertrude Blackchief, a proceeding was commenced in the Supreme Court of the state of New York, county of Erie, in the name of the People of the State of New York on the relation of Ira Charles and Hattie Charles against Gertrude Blackchief, the Chiefs' Council of the Tonawanda Band and others, for a writ of prohibition and injunction to restrain the said Gertrude Blackchief from instituting any proceedings in or before the Chiefs' council of the Tonawanda Band, and to restrain the Chiefs' Council from entertaining any action or proceeding or making any order or decree relating to the said property. On or about May 7, 1934, the Supreme Court of the state of New York, county of Erie, issued an order perpetually enjoining Gertrude Blackchief from instituting or prosecuting any proceeding before the Chiefs' Council and restraining the Chiefs' Council from entertaining, determining, or enforcing any proceedings in relation to the said property. On or about March 15, 1934, an action was commenced in the Supreme Court of the state of New York, county of Genesee, by Hattie Charles and others against Gertrude Blackchief and others for the purpose of enforcing their alleged claims to the said property by the application of the inheritance laws of the state of New York. In this action they applied for a partition of the said lands, and the said partition proceeding culminated in a judicial sale by the referee appointed by the Supreme Court in said action. The referee was directed by the court to sell the property at public auction to the highest bidder. The sale took place on September 5, 1936, and the property was purchased at said sale by the defendant Hattie Charles. At the time the property was offered for sale by the referee, it was stated by the attorney for the defendant in the partition action, with the acquiescence of the referee, that no one but the members of the Tonawanda Band would be permitted to bid, although there was no such provision in the order of sale, and this fact was at the time called to the referee's attention. The sale was duly confirmed and a deed of conveyance was executed by the referee and delivered to the defendant Hattie Charles.

■ The allegations of the bill establish that the United States has a real and direct interest in the matter in controversy. The Tonawanda Band, being a distinct tribe, is under the guardianship of the United States

and thereby entitled to its aid and protection. The custom and usage of the Tonawanda Band in establishing descent of real property on the reservation has been overridden by the state courts, and in lieu thereof there has been substituted the laws of descent of the state of New York, all without the consent of the Indians or the United States. This gives rise to a duty on the part of the government to its wards to protect them in their property rights and an independent duty of carrying out a well-defined governmental policy in preserving intact the Indian reservation with the management of internal affairs within the hands of the Indians. For such purpose the government can maintain an action in its own courts. Heckman v. United States, 224 U.S. 413, 437, 32 S.Ct. 424, 56 L.Ed. 820; United States v. Boylan, 2 Cir., 265 F. 165.

■ The right of a tribe to govern itself in accord with tribal laws and customs without interference or dictation from the state courts has been upheld by the highest court of New York state. Mulkins v. Snow, 232 N.Y. 47, 133 N.E. 123; Patterson v. Seneca Nation, 245 N.Y. 433, 440, 157 N.E. 734.

■ Accepting without derogation the allegations of the bill, Gertrude Blackchief was determined to be entitled to the possession and use of the tribal lands in question in accordance with the custom and usage of the tribe at the "Consolation Feast;" and in further accord with this custom and usage she duly petitioned the Chiefs' Council of the Tonawanda Band for enforcement of this determination. There was, therefore, an established tribunal in accordance with the custom and usage of the tribe for determining the right to possession of tribal lands. Interference with its procedure by injunction of the state courts was an unwarranted and unlawful disturbance of the right of the Indians to the free use and enjoyment of its tribal property and a violation of treaties guaranteeing these rights.

■ The reservation lands are held in common by the tribe, although individual members of the tribe may be in possession of a particular tract, and such possession is recognized by the tribe. But the lands are inalienable except with the concurrence and consent of the United States. An individual member of the tribe cannot convey title to any particular tract of reservation

lands. U. S. v. Boylan, supra. The Judicial sale by the referee and the referee's deed in the partition action ran counter to that principle and purported to convey title to reservation lands in fee simple. This is repugnant to governmental policy in regard to Indian reservations. If such sales are countenanced by the government there is danger that in time the reservation will cease to exist as such. Congress has adopted a policy of continuing the tribal relations of Indians and their rights as distinct political communities, apart from state interference. Congress alone may vary this policy. U. S. v. Boylan, supra. Until such time as Congress sees fit to change it, any interference with it either by state legislation or by extension of the jurisdiction of the state courts over internal affairs of Indians on the reservation is an unlawful interference with a governmental function. The complaint states a cause of action cognizable in equity.

The motion should be denied.