OPINION OF THE COURT
Rose H. Sconiers, J.
Defendants, Seneca Nation of Indians, L. Daniel Leroy and Valerie Henhawk, by notice of motion, seek an order dismissing plaintiffs’ Burt and Jean Valvo’s complaint. Defendants contend that, as a sovereign Indian Nation and representatives duly employed therein, they are immune from suit as, absent congressional consent, State law is not applicable to Indian tribes and Indian land. Plaintiffs resist this motion. Oral argument was had before this court, Part 32, Erie County Supreme Court; decision was reserved and counsel were requested to submit legal memoranda. Those memoranda have been received as have several supplemental letters and case authority submitted over several months. Upon review I now find and decide as follows:
Several underlying facts are not in dispute; the Seneca Nation is a Federally recognized Indian tribe with a reservation located in Erie and Chautauqua Counties, New York, part of which borders the Cattaraugus Creek and which is known as the Cattaraugus Indian Reservation. The defendants, Leroy and Henhawk, are Seneca Nation law enforcement officers whose actions herein were made in the course of their duties and on behalf of the Seneca Nation. Defendant, Snow’s Marina, is operated by the Snow family (Myra Williams) at the confluence of Cattaraugus Creek and Lake Erie and consists of a boat marina and a community of approximately 100 homes, cottages and mobile homes. The Snow family members are enrolled Seneca Indians and operate the marina and residential community on land allocated to them from the Seneca Nation. Most of the homeowners are non-Indians leasing land from the Snow family while retaining title to any improvements thereon.
*514 Plaintiffs leased land from the Snow family on land located at or near the mouth of Cattaraugus Creek and in March 1995 commenced building a home on this property. As the building neared completion, the plaintiffs were approached by defendants Leroy and Henhawk and presented with a criminal summons, returnable in the Seneca Peacemakers Court, charging them with trespass, in violation of Indian Fish and Game Law. On their appearance in the Peacemakers Court, the charge was converted to a civil trespass, naming plaintiff Burt Valvo and Myra Williams, and alleging that the Valvo home was built not on land allotted to Snow’s Marina but rather on common land of the Seneca Nation. This boundary line dispute has been ongoing in the Peacemakers Court.
Concurrently, plaintiffs commenced the action herein seeking a judgment: (a) enjoining the Nation from taking enforcement action; (b) enjoining Mr. Leroy and Ms. Henhawk from entering the property; (c) declaring Snow’s Marina the rightful owner of the leased premises; (d) declaring the current lease between the plaintiffs and defendant Snow’s Marina valid, or in the alternative; (e) ordering the Nation to either enter into a long-term lease with the plaintiffs or compensate them for the value of their home and possessions.
Additionally, plaintiffs complain that defendants Leroy and Henhawk, accompanied by armed men, advised plaintiffs they must leave the premises or be subject to physical expulsion and impoundment of property. Plaintiffs, therefore, seek the protection of their life, property and their person.
In pressing its motion, the Seneca Nation maintains that the plaintiffs’ suit asks this court to determine the ownership of and rights to land located within the boundaries of the Cattaraugus Indian Reservation. The Seneca Nation, therefore, seeks dismissal on the grounds that: (1) State laws are not applicable to Indian tribes and Indian lands absent congressional consent; (2) the Nation is immune from suit; (3) Nation officials are immune from suit when acting in their official capacity; (4) the Nation is a necessary party that cannot be joined for the reasons set forth in items (1) and (2); (5) State courts should defer to pending tribal court proceedings under the Indian exhaustion doctrine.
In essence, this court is asked to determine whether, under the facts of this case, the doctrine of sovereign immunity compels dismissal.
Plaintiffs argue that this matter is not a question of State Supreme Court’s jurisdiction over the internal officers of the *515 Seneca Nation and that defendants’ reliance on Bowen v Doyle (880 F Supp 99 [1995]) is misplaced. Rather, plaintiffs contend that this is a business dispute between Indian (Snow’s Marina) and non-Indian (plaintiffs) which, as recognized in Bowen v Doyle, may be adjudicated in New York civil courts to the same extent as in other civil cases. (Citing 25 USC §§ 232, 233; Indian Law § 5.) That analysis, however, oversimplifies plaintiffs’ suit.
The State statute provides in language nearly identical to the Federal statute: "[a]ny action or special proceeding between Indians ór between one or more Indians and any other person or persons may be prosecuted and enforced in any court of the state to the same extent as provided by law for other actions and special proceedings.” (Indian Law § 5.)
These statutes afford the jurisdiction of this State’s courts in actions between individual Indians and non-Indians, thereby assisting in the free flow of commerce. It is also otherwise permissive legislation opening State courts for resolution of disputes between Indians, if they choose to use them. These statutes do not, however, as urged by plaintiffs, subject a recognized Indian tribe to State court jurisdiction simply because the underlying commercial transaction originally involved Indian and non-Indian individuals, only to later encompass the Seneca Nation in a land dispute between the Seneca Nation, one of its members and plaintiffs.
It has become fundamental that an Indian tribe may not sue or be sued in State court without its consent or without express statutory authority. As stated in Bowen v Doyle (supra, at 127-128): "As the Second Circuit held in Fluent v. Salamanca Indian Lease Auth., 928 F.2d 542 (2d Cir.), cert, denied, 502 U.S. 818, 112 S.Ct. 74, 116 L.Ed.2d 48 (1991), 'Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers.’ Id. at 545 (quoting Santa Clara Pueblo, 436 U.S. at 58, 98 S.Ct. at 1676; Oklahoma Tax Comm’n v. Citizen Band Potawatomi Indian Tribe, 498 U.S. 505, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991)). A tribe’s sovereignty, however, is subject to Congress’ plenary control and tribal immunity may, therefore, be waived by Congress. Id. Such a waiver 'cannot be implied but rather must be "unequivocally expressed.” ’ Id. (quoting Santa Clara Pueblo, 436 U.S. at 58-59, 98 S.Ct. at 1676-1677). Defendantsintervenors do not suggest here, nor could they, that § 233 waives the Nation’s tribal sovereign immunity. There is notably absent in § 233 any conferral of state jurisdiction over the tribes themselves, much less an unequivocal expression of a *516 waiver of tribal sovereign immunity. See Bryan, 426 U.S. at 389, 96 S.Ct. at 2111.”
Plaintiffs’ reliance on Castiglia Constr. Co. v Seneca Nation of Indians (Sup Ct, Chautauqua County 1967, Phillips, J., on file Chautauqua County Clerk, Liber 27 of Judgments, at 564) in support of their claim that this court has, in the past, accepted jurisdiction in commercial matters between the Seneca Nation and non-Indians is misplaced. In Castiglia, the court found that the doctrine of sovereign immunity did not there attach because the contract in issue was "governed by or in pursuance of the authority given a Tribe to act under special legislation”. The court, therefore, reasoned: "Certainly Public Law 88-533 gave to the Seneca Nation the right, with the approval of the Secretary of the Interior, to create rights and liabilities by contract. The authority to create rights and liabilities presupposes, in our system of jurisprudence, the authority to enforce them, and to be subject to the right of the other party to enforce its rights against the Seneca Nation. Such is the rule of reason.”
Whether this special legislation contained a clear and plain abrogation of the Seneca Nation’s exclusive jurisdiction over its contractual affairs or whether this decision was simply "wrongly decided” as urged by defendants is not legally significant to the issue at hand. For even in Castiglia (supra) the court recognized the rule of sovereign immunity and found that contracts under the special legislation therein were exempt from the "general rule”.
The court agrees with defendants that the ruling in United States v Charles (23 F Supp 346 [1938]) is controlling.
There too an action involving ownership of tribal land and its allocations had come before the "Chiefs’ Council” which was considering the eviction of defendant Charles. Defendant Charles’ claim of ownership was based on a claim of heirship.
Before the Chiefs’ Council could rule, defendant commenced a proceeding in Erie County Supreme Court for a writ of prohibition and injunctive relief. Supreme Court ultimately granted a permanent injunction and appointed a Referee who sold the disputed property to defendant at public auction.
In denying defendant’s motion to dismiss the Federal action the District Court ruled: "Accepting without derogation the allegations of the bill, Gertrude Blackchief was determined to be entitled to the possession and use of the tribal lands in question in accordance with the custom and usage of the tribe at *517 the 'Consolation Feast,’ and in further accord with this custom and usage she duly petitioned the Chiefs’ Council of the Tonawanda Band for enforcement of this determination. There was, therefore, an established tribunal in accordance with the custom and usage of the tribe for determining the right to possession of tribal lands. Interference with its procedure by injunction of the state courts was an unwarranted and unlawful right of the Indians to the free use and enjoyment of its tribal property and a violation of treaties guaranteeing these rights.” (Cf., King v Warner, 137 NYS2d 568 [1953].) Insofar as plaintiffs’ complaint alleges causes of action against defendant, Seneca Nation, and defendants L. Daniel Leroy and Valerie Henhawk, as tribal officials acting in their representative capacity and within the scope of their authority, for injunctive and declaratory relief, defendants’ motion for summary judgment dismissing the complaint is granted.
This decision in no way is to be construed to limit plaintiffs’ right to seek recourse against defendant Snow’s Marina and/or Myra Williams for consequential damages.
In a supplemental argument plaintiffs further contend that the land in issue is not a mere boundary dispute between Seneca Nation and Snow’s Marina over allegedly common Indian land but, in fact, involves land never actually deeded to the Seneca Nation. Plaintiffs submitted copies of a map made by the United States Bureau for the 1890 United States Census and a survey map made by J.H. Barnes in November 1918 which notes that the reservation line near the shore of Lake Erie does not encompass the land upon which plaintiffs have erected their home.
 While this may in later proceedings raise a justiciable issue over actual ownership of this land, plaintiffs have offered no evidence that the land is owned by defendant Snow’s Marina independent of its allotment from the Seneca Nation. It is only through the Snow’s Marina lease that plaintiffs would have obtained a color of title enabling them to maintain a claim of unjust enrichment against a "true owner”. Here defendant Seneca Nation asserts a claim of ownership over common Indian land which must be litigated in the Peacemakers Court. If, assuming an issue exists, and Snow’s Marina believes it has a claim of adverse possession independent of the Indian allotment, or if the Seneca Nation believes it also has an adverse possession claim independent of the original grant of reserva *518 tion land, such claims must be left for Federal court. For the present, plaintiffs are without standing to raise this issue and this court is without jurisdiction to entertain this issue.