IN THE MATTER OF THE GUARDIANSHIP OF K.D.B.
2025 OK 10
Case Number: 121075
Decided: 02/11/2025
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 10, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

In the Matter of the Guardianship of: K.D.B., born 11/2007; and K.M.B., born 9/2009, Minor Children,
Tracy L. Clark and Edward A. Clark, Petitioners/Appellants,
v.
Kyla Hough, Natural Mother, Respondent/Appellee
and
Cherokee Nation, Intervenor/Appellee,
and
Justin Bentley, Natural Father, Respondent.
ON APPEAL FROM THE DISTRICT COURT OF ROGERS COUNTY
HONORABLE STEPHEN R. PAZZO, DISTRICT JUDGE
¶0 This appeal originates from a private guardianship over two Indian children. After years of guardianship proceedings, the Cherokee Nation requested a transfer to tribal court pursuant to the Intergovernmental Agreement Between the State of Oklahoma and the Cherokee Nation Regarding Jurisdiction over Indian Children within the Nation's Reservation. The district court granted the motion to transfer. Guardians appealed and we granted the Cherokee Nation's motion to retain.
AFFIRMED.
Tracy L. Clark and Edward A. Clark, Pro Se, Claremore, Oklahoma, Petitioners/Appellants. 
Gilbert J. Pilkington, Jr., Pilkington Law Firm, Tulsa, Oklahoma, for Respondent/Appellee, Kyla Hough.
Chad Harsha, Attorney General, Paiten Taylor-Qualls, Senior Assistant Attorney General, Cherokee Nation, Tahlequah, Oklahoma, for Intervenor/Appellee, Cherokee Nation. 
OPINION
DARBY, J., 
¶1 The question before us is whether the district court erred in transferring this case to the District Court of the Cherokee Nation pursuant to the Intergovernmental Agreement Between the State of Oklahoma and the Cherokee Nation Regarding Jurisdiction over Indian Children within the Nation's Reservation (Agreement), Sept. 1, 2020, Okla. Sec'y of State Doc. No. 50566, https://www.sos.ok.gov/documents/filelog/93672.pdf. We answer in the negative.
I. BACKGROUND & PROCEDURAL HISTORY
¶2 This matter first originated on June 6, 2013, when Tracy L. Clark and Edward A. Clark, Petitioners/Appellants/Guardians, filed a petition for the appointment of guardians of minor children in Rogers County District Court. The minor children were both enrolled members of the Cherokee Nation. The district court entered a temporary order appointing Petitioners as Guardians the same day.
¶3 On June 20, 2013, Cherokee Nation intervened in the case. Nation noted that the minor children are both "Indian child[ren]" within the meaning of 25 U.S.C. § 1903(4) of ICWA; Indian children's tribe has the absolute right to intervene at any point in a state court proceeding for foster care placement of an Indian child pursuant to 25 U.S.C. § 1911(c); Nation's intent at the time was to be involved with ICWA compliance and make recommendations; and Nation reserved the right to transfer the proceedings to tribal court. On October 25, 2013, the district court issued letters of guardianship to Petitioners. On April 11, 2014, the district court filed its order appointing the Petitioners as Guardians.
¶4 On January 30, 2020, Nation filed a document that it titled "inactive letter," which stated:
Cherokee Nation Indian Child Welfare (ICW) has previously been an active party in this case; however due to the current status, Cherokee Nation ICW is closing this case. The Federal Indian Child Welfare Act (ICWS [sic]) still applies and Cherokee Nation ICW is requesting notices of any new court hearings. At which time, ICW may reopen the case.
¶5 On November 18, 2021, Nation filed a motion to transfer to Cherokee Nation District Court. Nation first noted that both minor children were members of the Cherokee Nation and came within the definition of "Indian Child" within the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1903(4). Nation also noted that earlier, on September 1, 2020, Nation and the State of Oklahoma had entered the Intergovernmental Agreement Between the State of Oklahoma and the Cherokee Nation Regarding Jurisdiction over Indian Children within the Nation's Reservation. Nation alleged that the State and Nation signed the Agreement in anticipation of a ruling by the Oklahoma Court of Criminal Appeals that the Cherokee Nation Reservation was never disestablished, and that the Oklahoma Court of Criminal Appeals issued such ruling on March 11, 2021, in Hogner v. State, , . Nation noted that pursuant to ICWA, Nation has exclusive jurisdiction over an "Indian Child who resides or is domiciled within the reservation of such tribe" -- but that pursuant to the Agreement, Nation had agreed to concurrent jurisdiction. Nation then pointed to the relevant Agreement language, which stated:
In guardianships . . . where the State of Oklahoma is not a party and the child is domiciled or located within the reservation of the Tribe . . . [t]he state or tribal court that makes the first child custody determination concerning a particular child shall retain exclusive, continuing jurisdiction over the child custody proceeding, unless the Tribe seeks to transfer the matter to tribal court. . . . . The state court shall transfer any voluntary custody proceeding, or an involuntary custody proceeding where the State of Oklahoma is not a party, to the tribal court if requested by the tribe. The good cause provisions of 25 U.S.C. § 1911(b) and the accompanying regulation shall not operate to deny transfer to tribal court as the tribal court would have otherwise had exclusive jurisdiction. 
Agreement, § V(2). Nation noted that the transfer is not discretionary under the Agreement when requested by the tribe and that the court shall transfer the matter.
¶6 On December 6, 2021, Guardians filed their response and objection to transfer to Cherokee Nation District Court in which the Guardians denied that the Agreement can be viewed to "redefine 'reservation' from the definition contained within" § 1903(10). Guardians asserted that the minor children do not reside within Nation's reservation but rather reside at an address in Claremore, Oklahoma, and attached a copy of the deed to Guardians' home. Further, Guardians argued that the Agreement cannot usurp federal statutes such as § 1911(b)'s provision that a request to transfer from state court to tribal court must be granted unless either parent objects to the transfer or good cause to deny the transfer is demonstrated, which Father had previously done in response to Mother's request for transfer of the proceedings to tribal court.
¶7 On November 1, 2022, almost a year after Nation filed its motion to transfer, Father also filed an objection and response in opposition to the motion. Father clearly stated his objection was pursuant to § 1911(b). Father argued that the Agreement cannot "be viewed to redefine 'reservation' from the definition contained within" § 1903(10). Father also argued that the minor children do not reside within Nation's reservation, but rather live with Guardians in Claremore, Oklahoma. Father further argued that the Agreement cannot usurp federal statutes such as § 1911(b), and to the extent that it attempts to do so, it is not enforceable.
¶8 On December 12, 2022, the district court held a hearing on the issue of transfer. On January 10, 2023, the district court issued its order stating:
After hearing from the parties, this Court found as follows:
1) The Court is not making a determination as to whether or not McGirt v. Oklahoma, 140 S. Ct. 2452 (2020) and/or Hogner v. State, , applies to civil matters.
2) The Court does find that the Agreement between the State of Oklahoma and the Cherokee Nation is valid and controls regarding jurisdiction of Indian Children domiciled on the Cherokee Nation Reservation.
3) The Court finds that the children in question are domiciled on the Cherokee Nation Reservation.
4) The Court finds that, per page 4, section 2 of the Agreement, in state court child custody proceedings under ICWA, 25 U.S.C. §§ 1901 et seq., where the State is not a party, and where the Nation requests transfer to tribal court, that neither the good cause nor parental objection provisions of 25 U.S.C. § 1911 allow the Court to deny transfer to the Cherokee Nation. That provision of the Agreement specifically applies to this case. The State and Cherokee Nation agreed to this provision to protect and preserve the otherwise exclusive jurisdiction of the Nation over children domiciled on the Cherokee Nation Reservation, 5) The Court sustained the Cherokee Nation's Motion to Transfer to Tribal Court as is set forth herein. 6) Upon oral motion by the Guardians, and over the objection of Mother and Cherokee Nation, the Court further finds that the Court's order transferring jurisdiction is stayed pending appeal of this Order and through final ruling of the Appellate Court in accordance with Title 12 O.S. Section 990.4(C). Should this Court's decision not be appealed by Respondent Guardians, this case shall be transferred to Tribal Court immediately. 
Ord. Transferring to Tribal Ct., Jan. 10, 2023.
¶9 Guardians timely filed their Petition in Error, and this Court granted Nation's motion to retain. On appeal, Guardians argue that (1) the district court abused its discretion in finding that the minor children reside on the Cherokee Nation Reservation; (2) Cherokee Nation waived its right to demand transfer of the proceeding through lapse of time; (3) transfer is not authorized either by the Agreement or by § 1911(a) of ICWA; (4) transfer is not authorized by § 1911(b) of ICWA; and (5) transfer here would violate due process of law.
II. STANDARD OF REVIEW
¶10 The State of Oklahoma and the Cherokee Nation entered into the Agreement on September 1, 2020. The Agreement received post hoc endorsement from the Oklahoma Legislature via its amendment of the Oklahoma Indian Child Welfare Act in April of 2021. See ; see also 2021 Okla. Sess. Laws 686, 687 (eff. Apr. 23, 2021) ("The State of Oklahoma hereby ratifies all agreements in conformity with the Federal Indian Child Welfare Act executed prior to the enactment of this act, and any such agreement shall be enforceable in any case filed or pending at the time that an agreement vesting concurrent jurisdiction is entered into between the state and an Indian tribe."). Because the Agreement has been ratified via statute by the Oklahoma Legislature, it is public law which must be interpreted by use of canons of statutory construction. See Griffith v. Choctaw Casino of Pocola, , ¶ 7, , 491. We review questions of law de novo. In re M.H.C., , ¶ 7, , 712.
¶11 Both the Agreement and ICWA require the district court to make an initial finding of fact regarding a jurisdictional question -- whether the Indian children live on their tribe's reservation. We have explained the appropriate level of review on jurisdictional questions involving facts as follows:
When a decision by a District Court, a court of general jurisdiction, adjudicates a jurisdictional issue involving law such as statutory interpretation applied to an uncontroverted fact, then a de novo review occurs on direct appellate review. To the extent we are asked to review a finding of fact made by a District Court on a motion challenging jurisdiction in an action at law, the finding and its effect on the court's order are reviewed using a clearly erroneous standard and the presence of competent evidence in the record to support the judgment; and when judicial discretion is utilized for a finding or ruling a clear-abuse-of-discretion standard is used.
I. T. K. v. Mounds Pub. Sch., , ¶ 11, , 131. This case involves an initial finding of fact by the district court regarding whether the Indian children live on their tribe's reservation; that factual determination is reviewed under a clearly erroneous standard. To reverse "it must be found that the trial judge made a clearly erroneous conclusion and judgment, against reason and evidence." Abel v. Tisdale, , ¶ 20, , 612. But we review interpretation of the Agreement and whether it applies to the adjudicated facts de novo as those are questions of law. See In re M.H.C., , ¶ 7, 381 P.3d, at 712.
III. ANALYSIS
¶12 In deciding whether the district court erred in transferring this case to the District Court of the Cherokee Nation pursuant to the Agreement, we must first determine if the Agreement applies here. The Agreement only applies to Indian children domiciled within the boundaries of the tribe's reservation. See Agreement, § IV, Concurrent Jurisdiction. If the Indian children are not domiciled within the boundaries of the tribe's reservation, then the Agreement would not apply nor would § 1911(a) of ICWA; in that case, this Court would then review the transfer under the guidelines of § 1911(b).
A. Whether Indian Children Reside on the Cherokee Nation Reservation

¶13 The Indian Child Welfare Act (ICWA) states a "'reservation' means Indian country as defined in section 1151 of Title 18 and any lands, not covered under such section, title to which is either held by the United States in trust for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to a restriction by the United States against alienation . . . ." 25 U.S.C. § 1903(10). This inclusive definition means that in order to be considered a reservation under ICWA the land must be either (1) covered under the definition in § 1151, or (2) held in trust by the United States for the benefit of an Indian tribe or individual, or (3) held by an Indian tribe or individual, subject to a restriction by the United States against alienation. It is clear that the property the Indian children reside on is not under either of the last two categories; thus for the Indian children to live on a reservation under ICWA, they must live in Indian country as defined in § 1151 of the Major Crimes Act. Section 1151 provides:
the term "Indian country", as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same. 
18 U.S.C. § 1151. Nation asserts that pursuant to McGirt v. Oklahoma, 591 U.S. 894, 140 S. Ct. 2452, 207 L. Ed. 2d 985 (2020), and Hogner v. State, , , the Cherokee Nation Reservation still exists under § 1151 and therefore also under ICWA. But Guardians argue the land their home rests on was an Indian allotment, for which the Indian title has been extinguished, thus is not a reservation and the burden is on Nation to prove otherwise.
¶14 In McGirt, the United States Supreme Court held that the Muscogee Creek Reservation was never disestablished and continues to be Indian Country under the Major Crimes Act, 18 U.S.C. § 1151. McGirt, 591 U.S., at 913, 934--35, 140 S. Ct., at 2468, 2480. The Court clarified there is only one place to look to determine whether a tribe continues to hold a reservation: the Acts of Congress. Id., at 903, 140 S.Ct., at 2462. The McGirt Court also distinguished the allotment process, noting that Congress allotted reservations and also abolished reservations with other tribes such as the Ponca and Otoe, something they did not do with the Muscogee Creek Reservation. See id., at 908, 140 S.Ct., at 2465. McGirt thus expanded the popular understanding of the extent of Indian Country under the Major Crimes Act in Oklahoma, but it did not address the existence or potential disestablishment of the Cherokee Nation Reservation or the existence of any reservation under civil law.
¶15 As case law has been updated post-McGirt, the United States Supreme Court again addressed the question of jurisdiction in Indian country regarding criminal matters in Oklahoma v. Castro-Huerta, 597 U.S. 629, 632--34, 142 S. Ct. 2486, 2492, 213 L. Ed. 2d 847 (June 29, 2022). In Castro-Huerta, the United States Supreme Court accepted that the crime occurred in "Indian country," through the Cherokee Reservation, and "[i]n light of McGirt and the follow-on cases, the eastern part of Oklahoma . . . is now recognized as Indian country." Id., 597 U.S., at 632--34, 142 S. Ct., at 2492 (citing State ex rel Matloff v. Wallace, , ¶ 15, , 689 (reaffirming recognition of the Cherokee Reservation)). While the Supreme Court reversed the Oklahoma Court of Criminal Appeals' holding that the state did not have concurrent jurisdiction, it did not disturb in any way the Court of Criminal Appeals' prior finding that the Cherokee Nation Reservation was never disestablished and is thus Indian Country for purposes of criminal law. See Castro-Huerta, 597 U.S., at 656, 142 S. Ct., at 2504--05 (holding "that the Federal Government and the State have concurrent jurisdiction to prosecute crimes committed by non-Indians against Indians in Indian country." (emphasis added)).
¶16 This Court is bound to uphold the United States Supreme Court's holdings in McGirt and Castro-Huerta to the extent that they apply here, if at all. The United States Supreme Court recognized the continued existence of the Cherokee Nation Reservation in Castro-Huerta under criminal law. See Castro-Huerta, 597 U.S., at 633--34, 142 S. Ct., at 2491--92. Like the United States Supreme Court, this Court's proper role "is to declare what the law is, not what we think the law should be." Id., at 656, 142 S. Ct., at 2504. "We will uphold the law of the land whatever it may be." In re Initiative Petition No. 349, State Question No. 642, , ¶ 14, 838 P.2d, at 7. We thus begin with the United States Supreme Court's recognition that the Cherokee Nation Reservation is Indian Country under criminal law. ICWA's definition of reservation explicitly imports the definition of "Indian country" -- as defined by § 1151 of the Major Crimes Act -- thereby incorporating by reference the criminal definition as held in McGirt. Accordingly, the Cherokee Reservation constitutes "Indian country" pursuant to § 1151, thereby meeting the definition of reservation under ICWA.
¶17 The district court found that the Indian children in question are domiciled on the Cherokee Nation Reservation. Ord. Transferring to Tribal Ct., Jan. 10, 2023. No party submitted any evidence to challenge that recognition by showing that Congress ever explicitly erased or disestablished the boundaries of the Cherokee Nation Reservation. Therefore, the district court was not clearly erroneous in finding the Cherokee Nation Reservation has never been disestablished and the Indian children in this case reside in the Reservation without evidence to support another conclusion. This is a limited holding, applicable only to ICWA. This is not an independent finding. Rather, ICWA's incorporation of § 1151 of the Major Crimes Act in its definition of reservation mandates the outcome of this particular matter.
B. Whether Nation Waived Right to Transfer
¶18 Guardians argue that Nation has waived its right to transfer through lapse of time. Guardians cite to this Court's recent holding in In re S.J.W., , ¶ 18, , 1244, that "[b]ecause § 1911's jurisdiction does not concern subject matter jurisdiction, the preservation of it as error is subject to waiver . . . ," but Guardians omit the final two words of the clause in the sentence they cited. In full, the sentence in In re S.J.W. reads "[b]ecause § 1911's jurisdiction does not concern subject matter jurisdiction, the preservation of it as error is subject to waiver on appeal, however; because of its importance, we address the question of whether the Carter County District Court erred in adjudicating S.J.W. deprived." Ibid. Unlike In re S.J.W., where the issue of jurisdiction was raised for the first time on appeal, Nation did not fail to present this matter to the district court; rather the determination of the jurisdiction of the Cherokee Nation District Court was a sine qua non to the district court's decision to allow the transfer. Further, § 1911(c) of ICWA allows the child's tribe to intervene at any point in the proceeding. Nation has not through lapse of time waived its right to transfer.
C. Whether the Agreement or Section 1911(a) of ICWA Authorize Transfer
¶19 Guardians argue that aside from the Agreement, transfer of jurisdiction is not warranted by ICWA. Guardians note that § 1911(a) of ICWA provides that tribes have exclusive authority over Indian child custody cases "except where such jurisdiction is otherwise vested in the State by existing Federal law." Guardians assert that the word "existing" shows Congress did not intend § 1911(a) of ICWA "to apply retroactively to cases arising on territory that was not understood at the time of ICWA's enactment to be reservation land, but which was determined to be so only decades later." Appellants' Br. 18. Guardians argue that while ICWA changed jurisdiction "by specifying exclusive tribal court jurisdiction over on-reservation child welfare matters and allowing transfer of certain off-reservation matters, it did so only where 'existing' law did not already determine jurisdiction--meaning only where a statute (such as Public Law 280) or common law principles such as res judicata or law of the case did not already govern." Id., at 19.
¶20 We disagree with Guardians' interpretation of section 1911(a). Oklahoma is not a Public Law 280 state. See Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla., 498 U.S. 505, 513, 111 S. Ct. 905, 911, 112 L. Ed. 2d 1112 (1991) (recognizing "Oklahoma disclaimed jurisdiction over Indian lands upon entering the Union and did not reassert jurisdiction over these lands pursuant to Public Law 280."); see also Murphy v. Royal, 875 F.3d 896, 936-37 (10th Cir. 2017), aff'd sub nom. Sharp v. Murphy, 140 S. Ct. 2412, 207 L. Ed. 2d 1043 (2020). Section 1903(10) of ICWA, defines reservation in part through the Major Crimes Act definition in title 18, § 1151. See infra, ¶ 12. As the McGirt Court noted, if Congress never took action to disestablish a reservation, it continued to exist regardless of the allotment process. Thus, the existing law at the time ICWA was enacted was that a reservation existed, even if the common understanding was that it did not. Without the Agreement, § 1911(a) would mandate transfer to tribal court because under it the tribe has exclusive jurisdiction over Indian children residing on the tribe's reservation.
¶21 Guardians also argue that even if the Court determines the minor children live on reservation land, the Agreement is not retroactive. But the Agreement includes a retroactivity clause. The retroactivity clause of the Agreement, reads:
The State and the Tribe agree that the concurrent jurisdiction provisions of this Agreement apply to any cases, actions, or proceedings pending at the time this Agreement becomes effective. Any cases pending in the state courts involving an Indian child domiciled on the Tribe's reservation shall continue in the state courts pursuant to the concurrent jurisdiction described in this Agreement. The Tribe hereby ratifies and agrees to extend full faith and credit to all child custody determinations rendered in any state court prior to this Agreement, except those child custody determinations involving an Indian child domiciled or located on lands identified in Section IV(1), and consent [sic] not to petition to invalidate any such action under 25 U.S.C. § 1914 on the basis that such action violated § 1911(a). 
Agreement, § X, Retroactivity. Guardians assert that this language means that all pending cases are required to continue permanently in state courts. But we disagree with that interpretation. The retroactivity clause of the Agreement applies to all cases currently pending at the time the Agreement became effective. The Agreement further states that cases currently pending in state court would continue so, following the other terms of the Agreement, rather than immediately transferring all pending cases involving Indian children to their tribe. Finally, the retroactivity clause provides that the tribe extends full faith and credit to all child custody determinations rendered in state court prior to the Agreement and the tribe would not petition to invalidate those actions. Nation in this case is not attempting to invalidate the district court's orders or a finalized proceeding. Rather, Nation has simply asked for the case to be transferred to tribal court. At the time of the transfer, Guardians will remain in such position unless and until the tribal court rules otherwise.
¶22 Guardians also argue in their brief that section X implicitly assumes that it applies only prospectively because "Section X's retroactivity provision says that its concurrent jurisdiction provisions--that is, Section IV--will apply to pending cases. The Tribe here is not seeking concurrent jurisdiction but exclusive jurisdiction." This is incorrect. Section X actually states: "Any cases pending in the state courts involving an Indian child domiciled on the Tribe's reservation shall continue in the state courts pursuant to the concurrent jurisdiction described in this Agreement." The Agreement thus provides for pending cases to follow the concurrent jurisdiction scheme laid out in the Agreement, not specifically, or only, in the provisions of the concurrent jurisdiction clause itself. Multiple sections in the Agreement discuss concurrent jurisdiction, not only the concurrent jurisdiction clause. The concurrent jurisdiction clause states:
The parties have agreed to enter into this jurisdiction sharing Agreement based on the premise that the Tribe has jurisdiction exclusive as to the State over any child custody proceeding involving an Indian child domiciled within the boundaries of the Tribe's reservation as provided for in 25 U.S.C. § 1911(a).
Within the reservation boundaries of the Tribe, the State of Oklahoma and the Tribe shall share concurrent jurisdiction over any Indian child domiciled within the reservation, except as follows:
(1) The Tribe shall retain exclusive jurisdiction over any child custody proceeding involving an Indian child domiciled or located on:

(A) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same; or
(B) land held in trust by the United States on behalf of an individual Indian or the Tribe; 
or 
(C) land owned in fee by the Tribe, if the Tribe--

(i) acquired fee title to such land, or an area that included such land, in accordance with a treaty with the United States to which the Tribe was a party; and (ii) never allotted the land to a citizen or member of the Tribe.
(2) Where an Indian child is a ward of the Tribe's court, the Tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.
Agreement, § IV, Concurrent Jurisdiction. The concurrent jurisdiction clause therefore allows for the State to have concurrent jurisdiction over Indian children in situations where without the Agreement, the tribe would maintain exclusive jurisdiction over them under ICWA. The concurrent jurisdiction scheme is continued in section V of the Agreement which provides for the tribe to request transfer to tribal court, as Nation has done here, not to re-enact exclusive jurisdiction as if the Agreement never existed.
¶23 Guardians further argue that under section V of the Agreement, the language explicitly and implicitly repudiates retroactive application, arguing that section V says it applies only to "initiation of involuntary child custody proceedings" or "the party initiating the child custody proceeding." But when determining intent of statutory language, the court "may look at each part of the statute, other statutes on the same subject, and the consequences of any particular interpretation." Toch, LLC v. City of Tulsa, , ¶ 22, , 866. Regarding determination of tribal or state court jurisdiction, the Agreement states:
Except in cases of emergency, the following procedures will apply to initiation of involuntary child custody proceedings in an Oklahoma court regarding an Indian child who is domiciled or resident on the Tribe's reservation, but not domiciled on the lands describe above in Section (IV)(1). In cases of emergency, the procedures set forth in Part VI of this Agreement, regarding emergency foster care placements, shall be followed.
(1) Involuntary child custody proceedings where the State of Oklahoma is a party.
. . . . (2) Voluntary child custody proceedings and involuntary child custody proceedings where the State of Oklahoma is not a party.
In guardianships, adoptions, or other child custody proceedings where the State of Oklahoma is not a party and the child is domiciled or located within the reservation of the Tribe, the party initiating the child custody proceeding may file said action in either the state or the relevant tribal court. The state or tribal court that makes the first child custody determination concerning a particular child shall retain exclusive, continuing jurisdiction over the child custody proceeding, unless the Tribe seeks to transfer the matter to tribal court. The tribal court may relinquish its exclusive, continuing jurisdiction if the court finds that such relinquishment would be in the best interest of the child. The state court shall transfer any voluntary custody proceeding, or any involuntary custody proceeding where the State of Oklahoma is not a party, to the tribal court if requested by the tribe. The good cause provisions of 25 U.S.C. § 1911(b) and the accompanying regulations shall not operate to deny transfer to tribal court as the tribal court would have otherwise had exclusive jurisdiction. Provided, however that transfers requested by a parent, guardian, or other party pursuant to 25 U.S.C. § 1911(b) shall control, absent tribal court declination, as to any requests to transfer a foster care placement or termination of parental rights to the relevant tribal court. 
Agreement, § V, Determination of Tribal or State Court Jurisdiction (emphasis added). While the Agreement lays out the procedures for cases initiated after its enactment and initial determination of jurisdiction, it also provides tribes with the authority to request transfer to tribal court at a later time. Guardians' argument that section V(2) only applies to the party initiating the proceedings completely ignores the latter language in section V(2) which allows the tribe to request transfer to tribal court at any time. We find the Agreement clearly provides for transfer to tribal court in this situation.
¶24 Guardians also argue that the Agreement, read in combination with ICWA, actually bars transfer of the case. Guardians believe transfer is barred because ICWA allows tribal-state agreements to "provide for orderly transfer of jurisdiction on a case-by-case basis." See 25 U.S.C. § 1919(a). Guardians assert that the Agreement does not comply with § 1919(a) because the Agreement says the state court shall transfer any involuntary custody proceeding where the State of Oklahoma is not a party if requested by the Tribe. Guardians suggest the "one-size-fits-all, non-discretionary rule is not an agreement that 'provide[s]' for transfer 'on a case-by-case basis.'" Again, we disagree. The Agreement provides that the tribe must request transfer on a case-by-case basis when they have otherwise agreed to allow concurrent jurisdiction by the State to continue. That is what Nation has done here; Nation's request to transfer jurisdiction of this proceeding has no effect on other cases pending in state court. The Agreement does exactly what § 1919(a) contemplates.
¶25 Next, Guardians believe the transfer is barred because (1) § 1914 of ICWA allows tribes to petition courts to invalidate judgments rendered by a state court which should have been rendered by a tribal court and (2) § 1914 is the tribe's sole remedy to reopen past judgments, but the Agreement explicitly waives that authority. Guardians argue that Nation's motion to transfer "is simply a Section 1914 motion under another name--even though the Tribe has agreed not to file such motions." Appellants' Br. 20. But Guardians are mistaken in the procedural posture of this case and what is contemplated under § 1914. The matter before us is not a final, past judgment. Nor is Nation requesting invalidation of the guardianship proceedings conducted until this point. This case involves a present, ongoing matter. Nation does not request invalidation of the guardianship, but rather requests transfer of the guardianship to tribal court for further resolution of the matters to commence there. Transfer is clearly authorized by the Agreement and § 1911(a) of ICWA. If we were to somehow find that the Indian children are domiciled within the boundaries of the Cherokee Nation Reservation yet the Agreement did not apply, transfer would be mandatory under § 1911(a) because § 1911(a) provides tribes "shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe . . . ." 25 U.S.C. § 1911.
D. Whether Transfer Is Authorized by Section 1911(b) of ICWA
¶26 On the other hand, if we were to determine that the Indian children do not reside within the boundaries of the Cherokee Nation Reservation, § 1911(b) would govern the transfer--including its parental objection and good cause provisions. Guardians make several arguments under § 1911(b) that transfer is not authorized. Guardians' entire argument on this point misses the key distinguishing factor in this case, which becomes clear when we read the entirety of § 1911(b):
(b) Transfer of proceedings; declination by tribal court
In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, That such transfer shall be subject to declination by the tribal court of such tribe.
25 U.S.C. § 1911(b) (emphasis added). The added emphasis to § 1911(b) highlights that in order for § 1911(b) to apply the child must not be domiciled or reside within the reservation of the Indian child's tribe. Above we noted that the district court did not err when it found the Indian children here are domiciled within the Cherokee Nation Reservation.
¶27 The Agreement actually confers more rights upon parents than ICWA itself. Under § 1911(a) of ICWA, the Indian tribe has exclusive jurisdiction over Indian children who reside or are domiciled within the reservation of such tribe. But the Agreement, which applies to those same Indian children who reside or are domiciled within the reservation of the tribe, provides for concurrent jurisdiction except when the tribe requests transfer. The Agreement also provides that if a parent, guardian, or other party, instead of the tribe, requests transfer to tribal court, § 1911(b) will now apply. Without the Agreement, § 1911(b) only applies to Indian children who are not domiciled or residing within the reservation of the Indian child's tribe--thus it would not apply here at all. The district court did not err when it found that the Agreement does not allow the court to consider any parental objections under § 1911(b) of ICWA in order to deny transfer, as the Agreement itself states, because without the Agreement this case would be controlled by the exclusive jurisdiction provision of § 1911(a). The district court did not err in granting Nation's motion to transfer the matter to tribal court.
E. Whether Transfer Violates Due Process
¶28 Finally, Guardians argue for the first time that transfer here would violate due process of law. Guardians essentially argue that allowing transfer of the case to tribal court would violate the due process rights of the parties to this case, "all of whom are American citizens entitled to have their rights adjudicated by a process compliant with both the U.S. and Oklahoma Constitutions." Appellants' Br. While Guardians correctly note that parents have a fundamental right to their children, there is no corresponding fundamental right attributed to Guardians. While Father objected to the transfer of the guardianship to tribal court in the district court proceedings, he failed to appeal the order. Guardians do not have standing to assert a due process claim on Father's behalf. Guardians have shown nothing to make this Court believe that a transfer to Cherokee Nation District Court would violate any of the parties' rights to due process.
IV. CONCLUSION
¶29 We find that the district court was not clearly erroneous in finding that the Indian children in this case are domiciled in the Cherokee Nation Reservation. We do not find that the Cherokee Nation Reservation has never been disestablished without any restrictions attached or for purposes of civil law generally. Rather, this holding is merely an acknowledgment of the existence of the Cherokee Nation Reservation under ICWA due to ICWA's incorporation of § 1151 of the Major Crimes Act in the ICWA definition of Indian country. We find the district court did not err in granting Nation's motion to transfer. The district court is affirmed. The matter is remanded to Rogers County District Court to lift the stay and transfer the case to the District Court of the Cherokee Nation.
AFFIRMED.
Rowe, C.J. (by separate writing) Winchester, Edmondson, Combs (by separate writing), Gurich, Darby, and Kane (by separate writing), JJ., concurring;
Kuehn, V.C.J. (by separate writing), concurs in result.
FOOTNOTES
 "(4) 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe . . . ." 25 U.S.C. § 1903(4).
 (c) State court proceedings; intervention
In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding.
25 U.S.C. § 1911(c).
 For the purposes of this chapter, except as may be specifically provided otherwise, the term--
. . .
(10) "reservation" means Indian country as defined in section 1151 of Title 18 and any lands, not covered under such section, title to which is either held by the United States in trust for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to a restriction by the United States against alienation;
25 U.S.C. § 1903(10).
 Father did not appear at the hearing due to car trouble.
 Justice Kuehn emphasizes that we "incorrectly and unnecessarily" decide the reservation status here because "the four corners of the Agreement apply and govern this matter, negating any court determination of Reservation status in ICWA cases." Kuehn, V.C.J., concurring in result ¶ 1. She further states, "the parties explicitly agree that for implementing ICWA, the Cherokee Reservation has already been established and exists." Id. ¶ 5. While it would have been convenient if the parties did agree upon that -- that language does not appear in the Agreement, necessitating our analysis in this opinion.
 (a) Exclusive jurisdiction

An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.
(b) Transfer of proceedings; declination by tribal court

In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, That such transfer shall be subject to declination by the tribal court of such tribe.
25 U.S.C. § 1911 (emphasis added).
 Title 18, section 1151 of the United States Code is a section in the Major Crimes Act and is titled, "Indian country defined." This is the definition of Indian country that was interpreted by the United States Supreme Court in McGirt v. Oklahoma, 591 U.S. 894, 140 S.Ct. 2452, 207 L. Ed. 2d 985 (2020).
 The Supreme Court described the situation therein as, "a crime committed in what is now recognized as Indian country (Tulsa) by a non-Indian (Castro-Huerta) against an Indian (his stepdaughter)." Castro-Huerta, 597 U.S., at 634, 142 S. Ct., at 2492.
 See In re Initiative Petition No. 349, State Question No. 642, , ¶ 12, , 7 ("Because the United States Supreme Court has spoken, this Court is not free to impose its own view of the law as it pertains to the competing interests involved."); see also Burns v. Cline, , ¶ 5, , 351 ("Where the United States Supreme Court has spoken, this Court is bound by its pronouncements.").
 Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title.
25 U.S.C. § 1914.
______________________________________________

ROWE, C.J., CONCURRING:
¶1 For much of the last century, Oklahoma's tribal landscape did not include reservations or tribal courts. The federal government dismantled tribal governments, including their independent court systems, in the late 1800s. It was not until the early 2000s that Oklahoma tribes began re-establishing their own court systems. Prior to this, the Indian Child Welfare Act ("ICWA"), in effect, simply allowed Oklahoma tribes to participate in state court proceedings involving Indian children. The term "reservation" remained nonexistent in our lexicon until 2020.
¶2 In 2020, the United States Supreme Court handed down McGirt v. Oklahoma, 591 U.S. 894 (2020) where for the first time in history the Court recognized reservation status of the Muscogee (Creek) Nation--but limited its finding to the Major Crimes Act. Two years later in Oklahoma v. Castro-Huerta, 597 U.S. 629 (2022), the United States Supreme Court acquiesced the Oklahoma Court of Criminal Appeals's finding that the eastern part of Oklahoma is now recognized as Indian country (including the Cherokee Nation). Oklahoma v. Castro-Huerta, 597 U.S 629, 634 (2022). Specifically, the Court stated,
Based on McGirt's reasoning, the Oklahoma Court of Criminal Appeals later recognized that several other Indian reservations in Oklahoma had likewise never been properly disestablished. See e.g., State ex rel. Matloff v. Wallace, , ¶ 15, , 689 (reaffirming recognition of the Cherokee, Choctaw, and Chickasaw Reservations); Grayson v. State, , ¶ 10, , 254 (Seminole Reservation). 
Castro-Huerta, 597 U.S. at 633-34. McGirt and Castro-Huerta implicated criminal matters and were not expressly extended to civil proceedings, such as this case.
¶3 To determine whether the district court erred in transferring the guardianship to the Cherokee Nation tribal court, we must determine whether the Indian children are domiciled within the reservation. However, the answer to that question requires this Court to determine the meaning of reservation. Under ICWA, reservation means:
Indian country as defined in section 1151 of Title 18 and any lands, not covered under such section, title to which is either held by the United States in trust or for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to a restriction by the United States against alienation. 
25 U.S.C.A. § 1903(10) (emphasis added). ICWA explicitly cross references Title 18 U.S.C.A. § 1151 of the Major Crimes Act to define reservation. Title 18 U.S.C.A § 1151 provides:
Except as otherwise provided in sections 1154 and 1156 of this title, the term "Indian country", as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.
18 U.S.C.A. § 1151 (emphasis added). In McGirt, the United States Supreme Court determined the Muscogee (Creek) Nation constituted "Indian country" for purposes of the Major Crimes Act. In Castro-Huerta, the United States Supreme Court stated "[i]n light of McGirt and the follow-on cases, the eastern part of Oklahoma, including Tulsa, is now recognized as Indian country." Castro-Huerta, 597 U.S. at 634. What cannot be ignored is that McGirt limited its finding to the Major Crimes Act, and although not expressed in Castro-Huerta, the case concerned a criminal matter.
¶4 The Majority correctly points out that ICWA's definition of reservation imports the definition of "Indian country"--as defined by 18 U.S.C.A § 1151--thereby incorporating by reference the criminal definition as held in McGirt. Majority Opinion ¶ 16. Accordingly, the Cherokee Nation constitutes "Indian country" pursuant to 18 U.S.C.A. § 1151 thereby meeting the definition of reservation under ICWA.
¶5 This is not an independent finding. Rather, ICWA's incorporation of 18 U.S.C.A. § 1151 in its definition of reservation mandates the outcome in this particular matter. In fact, this interpretation of ICWA's definition of reservation is not to be construed to alter our state's jurisprudence that for civil purposes reservations have never been recognized. It is only when Congress or the United States Supreme Court determines otherwise that we are to deviate from our longstanding jurisprudence. Nor are we bound by the decisions of the Oklahoma Court of Criminal Appeals, including State ex rel. Matloff v. Wallace, , ¶ 15, 4997 P.3d 686, 689 (reaffirming recognition of the Cherokee, Choctaw, and Chickasaw Reservations) and Grayson v. State, , ¶ 10, , 254 (finding the district court correctly found the United States had not disestablished the Seminole Nation Reservation). Oklahoma Pub. Emps. Ass'n v. State ex rel. Oklahoma Off. of Pers. Mgmt., , ¶ 22, , 846 n.27 ("Holdings in cases released by the Court of Criminal Appeals are not binding upon the Supreme Court.").
¶6 For purposes of ICWA, the Cherokee Nation is a reservation, therefore, the Indian children are domiciled within the reservation. Under 25 U.S.C.A. § 1911(a), the tribal court would have exclusive jurisdiction over this matter. If the Agreement controls here as a matter of law, the outcome is the same, as the Agreement is applicable to voluntary custody proceedings of Indian children domiciled within the reservation. Both § 1911(a) and the Agreement lead to the same conclusion: the district court did not err in transferring the guardianship to the Cherokee Nation tribal court.
FOOTNOTES
 The Curtis Act of 1898 amended the Dawes Act of 1887, resulting in the dissolution of tribal government, including tribal courts and tribal land claims in the Indian Territory of Oklahoma. M. Kate Tatro, Curtis Act (1989), The Encyclopedia of Oklahoma History and Culture (2010), https://www.okhistory.org/publications/enc/entry?entry=CU006 (last visited Nov. 22, 2024).
 In 1934 Congress passed the Indian Reorganization Act, which sought to reorganize tribal structures. The IRA authorized Indian tribes to organize and adopt constitutions. Oklahoma was initially exempted but the Oklahoma Indian Welfare Act of 1936 extended the main provisions of IRA to Oklahoma tribes. IRA inspired constitutions, however, did not establish a separate judicial branch, making tribal courts the least developed branch of a tribal government. Later, the Indian Self-Determination Act of 1975 was passed giving tribes the ability to provide for their own courts through federal grants and contracts.
In 1979, the Courts of Indian Offenses were re-established, covering eighteen Indian nations in Oklahoma. These courts were established throughout the United States under the Code of Federal Regulations (CFR) and the Court of Indian offenses acts as a tribe's judicial system until a tribe establishes their own tribal court. 25 C.F.R. § 11.100.
On December 17, 2003, the Memorandum of Agreement for the Chickasaw Nation to assume primary responsibility for the operation of the Chickasaw Agency Court of Indian Offenses "CFR Court" was agreed to and signed by Bill Anoatubby, Governor of the Chickasaw Nation, and by the designated representative of the United States of America, acting through the Bureau of Indian Affairs Eastern Oklahoma Regional Director for the Secretary of the Interior. Effective January 1, 2004, the Chickasaw Nation Judicial Department by and through the District Court of the Chickasaw Nation assumed full jurisdiction of the CFR caseload and all cases to be filed in the future. Our Nation, https://chickasaw.net/Our-Nation (last visited Nov. 22, 2024).
The Cherokee Nation District Court was re-established by Legislative Act in 1991 after the 10th Circuit Federal Court of Appeals case decided Ross v. Neff, 905 F.2d 1349 (10th Cir. 1990) which held that the State of Oklahoma did not have criminal jurisdiction over Indian Country within the Cherokee Nation. History, https://www.cherokeecourts.org/History (last visited Nov. 22, 2024).
The Choctaw Nation Court of General Jurisdiction was established in 2009 to unite and consolidate the Nation's courts. Replacing the former CFR Court of Indian Offenses, the Court of General Jurisdiction operates through the Appellate Division and the District Courts of the Choctaw Nation. About the Choctaw Nation Court of General Jurisdiction, https://www.choctawnationcourt.com/courts/court-of-general-jurisdiction/ (last visited Nov. 22, 2024).
Through its Code of Laws, the Seminole Nation established the Judicial Branch of the Government of the Nation with a lower court known as the District Court and an upper court known as the Supreme Court. This provision was enacted December 5, 2009, and approved by the Bureau of Indian Affairs on February 2, 2012. Seminole Nation Code of Laws, Title 5, Section 5-0-101.
The Muscogee (Creek) Nation's District Court was established through the ratification of its Constitution in 1981. Muscogee (Creek) Nation Code, Title 26, Section 2-101.
 "An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law." 25 U.S.C.A. § 1911(a).
 Title 25 U.S.C.A. § 1911(b) is not applicable considering our finding that the Indian children are domiciled within the Cherokee Nation Reservation.
 Intergovernmental Agreement Between the State of Oklahoma and the Cherokee Nation Regarding Jurisdiction over Indian Children within the Nation's Reservation, (filed Sept. 1, 2020), available at https://www.sos.ok.gov/documents/filelog/93672.pdf.
_________________________________________

COMBS, J., with whom GURICH, J., joins, concurring specially:
¶1 I concur in the majority's decision to affirm the district court's order transferring this guardianship matter to tribal court. I write separately to explain why this Court must address the implications of McGirt v. Oklahoma, 591 U.S. 894 (2020), on child custody proceedings governed by ICWA.
¶2 In its recitation of the applicable standard of review on appeal, the majority opinion correctly states that "[b]oth the Agreement and ICWA require the district court to make an initial finding of fact regarding a jurisdictional question -- whether the Indian children live on their tribe's reservation." Majority Op. ¶ 11. Said another way, we cannot escape deciding whether the Indian children live on land within the "reservation" or "Indian country." That's true regardless of whether we proceed under the Agreement or under ICWA, as illustrated below.
¶3 Under ICWA, we must look to § 1911 to determine whether jurisdiction lies in the state court or tribal court. Subsection (a) gives the tribe exclusive jurisdiction if the Indian children "reside[] or [are] domiciled within the reservation of such tribe." 25 U.S.C. § 1911(a) (2018); see also Wilburn v. State (In re S.J.W.), , ¶ 20, , 1245. Subsection (b) gives the tribe and the State of Oklahoma concurrent jurisdiction over "Indian child[ren] not domiciled or residing within the reservation of the Indian child's tribe," with an understanding that the State court "in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe." § 1911(b); see also Wilburn, , ¶ 20, 535 P.3d at 1245. Thus, which subsection of § 1911 governs depends upon whether the children are or are not residing on the "reservation." Insofar as § 1903(10) of ICWA defines "reservation" to mean "Indian country as defined in section 1151 of Title 18," we must look to McGirt for a definition of the term "Indian country" as used in 18 U.S.C. § 1151. That is, we must determine what is meant by "reservation" in a post-McGirt world. See Majority Op. ¶ 16.
¶4 If we use the Agreement instead, we can't escape assessing whether the children reside within the reservation--contrary to what some of the other separate writings in this case would suggest. The Agreement aims to "create concurrent jurisdiction on the reservation of the Cherokee Nation with the State of Oklahoma" in lands that were not considered part of the reservation until after McGirt, although it never explicitly mentions that case. See Intergovernmental Agreement Regarding Jurisdiction over Indian Children Within the Nation's Reservation, State of Okla.-Cherokee Nation, Sept. 1, 2020, Okla. Sec'y of State Doc. No. 50566, § I, at 1 (emphasis added), available at https://www.sos.ok.gov/documents/filelog/ 93672.pdf. How do we know that was the intent? The Agreement never explicitly defines "reservation" in the "DEFINED TERMS" in Section (II). But the Agreement does discuss the "reservation" through comparison to and contrast with other lands. For example, Section (IV) spells out when the Cherokee Nation intends to share concurrent jurisdiction with the State of Oklahoma:
IV. CONCURRENT JURISDICTION
The parties have agreed to enter into this jurisdiction sharing Agreement based on the premise that the Tribe has jurisdiction exclusive as to the State over any child custody proceeding involving an Indian child domiciled within the boundaries of the Tribe's reservation as provided for in 25 U.S.C. § 1911(a).
Within the reservation boundaries of the Tribe, the State of Oklahoma and the Tribe shall share concurrent jurisdiction over any Indian child domiciled within the reservation, except as follows: 
(1) The Tribe shall retain exclusive jurisdiction over any child custody proceeding involving an Indian child domiciled or located on: 

(A) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same; 
or 
(B) land held in trust by the United States on behalf of an individual Indian or the Tribe; 
or 
(C) land owned in fee by the Tribe, if the Tribe--

(i) acquired fee title to such land, or an area that included such land, in accordance with a treaty with the United States to which the Tribe was a party; and (ii) never allotted the land to a citizen or member of the Tribe." 
. . . .
Intergovernmental Agreement, supra, § IV, at 2--3 (emphasis added). From this language we glean a few things. First, "the Agreements only contemplate concurrent jurisdiction in the event [§] 1911(a) applies," Wilburn, , ¶ 19, 535 P.3d at 1245 (emphasis added), which in turn depends upon whether the children "reside[] or [are] domiciled within the reservation," 25 U.S.C. § 1911(a). Second, the exceptions in Section (IV)(1) describe lands that were collectively--albeit incorrectly--considered "Indian country" prior to McGirt. For instance, the exception in Section (IV)(1)(B) sounds much like the language in § 1903(10) of ICWA that defines "reservation" to include "any lands . . . title to which is either held by the United States in trust for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to a restriction by the United States against alienation." 25 U.S.C. § 1903(10) (2018). And the exception in Section (IV)(1)(A) resembles the language in § 1151(c) of the Major Crimes Act (referenced in § 1903(10) of ICWA) that defines "Indian country" to include "all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same." 18 U.S.C. § 1151(c) (2018). These similarities demonstrate the intent of the parties to the Agreement to maintain exclusive jurisdiction where it existed prior to McGirt. Moving along to Section (V)(1), the Agreement lays out certain "procedures [that] will apply to initiation of involuntary child custody proceedings in an Oklahoma court regarding an Indian child who is domiciled or resident on the Tribe's reservation, but not domiciled on the lands described above in Section (IV)(1)." Intergovernmental Agreement, supra, § V, at 3 (emphasis added). In other words, the terms of the agreement only apply to an Indian child who resides on McGirt's expanded reservation, but not on pre-McGirt Indian country. In Section (V)(2), we finally arrive at the provision that governs this matter: "In guardianships, adoptions, or other child custody proceedings where the State of Oklahoma is not a party and the child is domiciled or located within the reservation of the Tribe, the party initiating the child custody proceeding may file said action in either the state or the relevant tribal court," id. § V(2), at 4 (emphasis added), with the understanding that "[t]he state court shall transfer any voluntary custody proceeding, or any involuntary custody proceeding where the State of Oklahoma is not a party, to the tribal court if requested by the tribe," id. (emphasis added). Each of these provisions of the Agreement requires us to analyze whether the children are or are not residing on the reservation as expanded by McGirt.
¶5 Consequently, the children's residency upon the reservation--and McGirt's implications on that determination--are issues we must address whether we proceed under the statute or the Agreement.
¶6 Because the children reside on land in Claremore that is within the Cherokee Nation's historical reservation boundaries as understood after McGirt, see Majority Op. ¶ 17, the tribal court had exclusive jurisdiction under § 1911(a) of ICWA but for the Agreement, see id. ¶ 20. Under the Agreement, the State's district court had concurrent jurisdiction pursuant to Section (IV) of the Agreement until the Cherokee Nation asked for a transfer of this guardianship proceeding to tribal court pursuant to Section (V)(2) of the Agreement. Id. ¶ 23. At that point, the "shall transfer" language of Section (V)(2) required the state court to transfer the matter to the tribal court. Moreover, Section (V)(2) provides that "[t]he good cause provisions of 25 U.S.C. § 1911(b) and the accompanying regulations shall not operate to deny transfer to tribal court as the tribal court would have otherwise had exclusive jurisdiction" under § 1911(a) of ICWA. Intergovernmental Agreement, supra, § (V)(2), at 4; see also Majority Op. ¶ 27. Thus, there was no basis for the state court to refuse transfer to the tribal court.
¶7 Consequently, we must affirm the district court's order transferring this matter to tribal court.
FOOTNOTES
 This precedential statement definitively demonstrates that the majority's discussion about whether § 1911(a) or (b) authorizes transfer is not dicta, contrary to what Justice Kane asserts in his separate writing. See Kane, J., Concurring ¶ 2. Because § 1911(a) does apply, the Agreement applies.
________________________________________

KANE, J., concurring:
¶1 I concur with the Court's holding that the trial court did not err in transferring the matter to the tribal court pursuant to the terms of the Agreement. I concur that Congress's definition of "reservation," for purposes of the Indian Child Welfare Act, includes "Indian country as defined in section 1151 of Title 18 . . . ." 25 U.S.C. § 1903(10). Congress explicitly and fully adopted the Major Crimes Act's definition of "Indian country" for ICWA. I further concur that the Court's holding the Indian children in this case reside within the boundaries of the Cherokee Reservation is limited to the definitions of "reservation" and "Indian country" in ICWA and the Major Crimes Act, respectively.
¶2 I write separately to say that, because the Agreement governs this child custody proceeding, the Court's discussion of whether transfer is authorized under 25 U.S.C. § 1911(a) and (b) is dicta. It is not essential to the disposition of this case. Pursuant to 25 U.S.C. § 1919, the State and the Cherokee Nation agreed to share concurrent jurisdiction over these Indian children domiciled within the Cherokee Reservation. Because the Agreement applies, § 1911(a) doesn't apply. Likewise, because the Agreement applies, § 1911(b) doesn't apply. Subsection (b) would govern transfer if the Indian children did not reside on the Cherokee Reservation, in which case the Agreement would not apply. Here, the State and the Cherokee Nation have agreed to transfer this case according to the terms of the Agreement. See Agreement, § V(2).
FOOTNOTES
 Similarly, Congress adopted the Major Crimes Act's definition in 18 U.S.C. § 2265(e), which provides that state and tribal courts have concurrent jurisdiction to issue and enforce civil protection orders "in the Indian country of the Indian tribe (as defined in Section 1151) . . . ." 18 U.S.C. § 2265(e) (emphasis added); see Milne v. Hudson, , ¶¶ 11-16, , 513-515 (applying the Major Crimes Act's definition under 18 U.S.C. § 2265(e)).
 According to the Agreement, when an Indian child resides on the reservation and the Agreement governs a voluntary child custody proceeding or involuntary child custody proceeding where the State is not involved, the good cause provisions of 25 U.S.C. § 1911(b) apply if a parent, guardian, or other party (not the Tribe) requests transfer to the tribal court. See Agreement, § V(2). That is not what we have here. Here, the Cherokee Nation requested transfer to the tribal court.
_______________________________________

KUEHN, V.C.J., CONCURRING IN RESULT:
¶1 I agree with the Majority that the District Court correctly transferred this case to the District Court of the Cherokee Nation pursuant to the Intergovernmental Agreement between the two. I write separately to emphasize that none of the Father's and Guardians' objections to the trial court's decision are relevant here, whether based on case law or statute. Additionally, I emphasize that the Majority incorrectly and unnecessarily decides to determine reservation status here. I believe the question of reservation status was settled by McGirt and subsequent cases considering the reservation status of tribes with similar treaties. McGirt v. Oklahoma, 140 S.Ct. 2452, 2460-62, 2464, 2468 (2020). This Court should not attempt to redefine reservation status or Indian Country in every separate civil case. Furthermore I conclude, as did the District Court, that the four corners of the Agreement apply and govern this matter, negating any court determination of reservation status in ICWA cases.
¶2 The State and Nation entered into the Agreement on September 1, 2020, and the Oklahoma Legislature ratified it by amendment of the Oklahoma ICWA in April 2021. ; 2021 Okla. Sess. Laws 686, 687 (eff. Apr. 23, 2021). Because the Legislature ratified the Agreement, it is a public law, comparable to statute, and we review the District Court's decision de novo. Griffith v. Choctaw Casino of Pocola, , ¶ 7, , 491.
¶3 The Agreement's preamble explicitly notes that it is intended to memorialize a partnership between the State and the Nation, to streamline the jurisdictional provisions of ICWA, and create concurrent jurisdiction for the Nation and the State on cases arising on the Cherokee Reservation. The relevant section of ICWA provides:
States and Indian tribes are authorized to enter into agreements with each other respecting care and custody of Indian children and jurisdiction over child custody proceedings, including agreements which may provide for orderly transfer of jurisdiction on a case-by-case basis and agreements which provide for concurrent jurisdiction between States and Indian tribes.
25 U.S.C. § 1919(a). Before September 1, 2020, the State and the Nation did not need an agreement since the reservation was not popularly recognized. State district courts regularly exercised jurisdiction in ICWA cases; with the Nation participating in state courts, it was thought the Cherokee children involved were not domiciled within a reservation. 25 U.S.C. § 1911(b). It was not until the United States Supreme Court ruling in McGirt v. Oklahoma, 591 U.S. 894 (2020), in July 2020 that the State and the Nation negotiated and agreed upon the terms of the Agreement. These parties established the environment in Oklahoma for which deprived Indian child cases under ICWA would proceed and under what reservation status.
¶4 Under the Agreement, Section 1911(a) would now apply in cases where, as here, the Cherokee child was domiciled within its tribal reservation, and the Nation's courts would have exclusive jurisdiction. 25 U.S.C. § 1911(a). In Section IV of the Agreement, the State agreed that, without the Agreement's provisions for concurrent jurisdiction, the Nation would have exclusive jurisdiction over its children domiciled within Reservation boundaries under Section 1911(a). The Nation agreed to relinquish exclusive jurisdiction and, in some circumstances, share the jurisdictional burden with state courts, reserving in each case the right to transfer the matter to tribal court. This served to advance the interests of both the State and the Nation and give effect to the ICWA requirements and policies surrounding the separation of Indian children from their families and tribes. The Agreement had the practical effect of restoring the concurrent jurisdiction common before McGirt. This does not suggest that the McGirt holding itself applies to this or any other civil matter. This Agreement is limited to its terms and affects only the parties to the Agreement.
¶5 Notably, the Agreement nowhere attempts to define or delimit the Reservation's boundaries. Instead, the parties explicitly agree that for implementing ICWA, the Cherokee Reservation has already been established and exists. Further, Section X of the Agreement specifically provides that its provision for concurrent jurisdiction applies retroactively to any pending cases, actions, or proceedings as of the Agreement's effective date.
¶6 In this case, Guardians claim that Children do not reside on the Reservation and ask this Court to determine that transfer to the Cherokee Nation District Court violates provisions of ICWA. The Majority suggests that to do so, this Court must determine whether the Reservation was disestablished and what its boundaries are. I disagree. For ICWA purposes, the Agreement itself answers this question: Children, enrolled members of the Cherokee Nation, lived with Guardians in Claremore, which is the undisputed physical address that sits squarely within the larger geographical boundaries of the Reservation after the Agreement was signed.
¶7 I would find that the Agreement applies here as a matter of law. And, given its status as public law in Oklahoma, plus the authorizing provision of Section 1919(a), I would reject Guardians' arguments that ICWA Section 1911(a), not the Agreement, controls here. I note that, were Guardians correct that Section 1911(a) controlled over the Agreement, the District Court's decision to transfer the case would still be correct -- in that circumstance, since Children reside on the Reservation, the Nation would have exclusive jurisdiction. And Guardians' argument that ICWA Section 1911(b) prevents the transfer fails because that statute applies only where children do not live within reservation boundaries.
¶8 The Agreement compelled the District Court's decision to transfer the case upon Nation's request. The Agreement provides that, in guardianships where the State is not a party and the children are located on the Reservation, the party initiating the proceedings may file in either state or tribal court; that court will retain exclusive, continuing jurisdiction unless the Nation moves to transfer the case to tribal court. At that point the State shall transfer the proceeding. Here, the Nation monitored the case for several years, then, after the Agreement was established, asked that it be transferred. The record does not support Guardians' suggestion that the Nation waived the right to request a transfer through lapse of time. This Court has suggested that a claim of error under Section 1911 is subject to waiver on appeal. In the Matter of S.J.W., , ¶ 18, , 1244. Nation has been involved in the proceedings below almost since their commencement and has not delayed the process in either its transfer request or this subsequent appeal.
¶9 I agree that the transfer required by the Agreement does not violate Guardians' due process rights. Guardians do not have the same fundamental right to Children that parents do. Father did not appeal the order transferring the case, and Guardians cannot raise a due process claim for him. Furthermore, the Agreement compelled the order to transfer the case from Rogers County to the Cherokee Nation District Court -- but neither the Agreement nor the transfer order removed Guardians from their position nor required them to relocate with Children. I agree that the stay should be lifted and the case transferred to the Cherokee Nation District Court.
FOOTNOTES
 The transfer is based on the Intergovernmental Agreement Between the State of Oklahoma and the Cherokee Nation Regarding Jurisdiction over Indian Children Within the Nation's Reservation (Agreement). Sept. 1, 2020, Okla. Sec'y of State Doc. No. 50566, https://www.sos.ok.gov/documents/filelog/93672.pdf.
 Children were first made wards of Guardians in June 2013, in Rogers County District Court. That month, the Cherokee Nation first intervened in the case, pursuant to the provisions of the federal Indian Child Welfare Act (ICWA) 25 U.S.C. § 1911(c), to preserve Nation's interest in the placement of Children; the case remained in state court in Rogers County. Nothing is unusual about this process; as explained previously, the State and Nation had concurrent jurisdiction before the Agreement was necessary. Guardians were formally appointed in April 2014. In January 2020, the Nation filed a document noting that it intended to move to inactive status in the case, but wished to be notified of new hearings and reserved the possibility of renewing its involvement. Subsequently, the Nation filed a motion to transfer the case to the Cherokee Nation District Court on November 18, 2021. After a hearing, on January 10, 2023, the district court granted the motion to transfer but stayed the execution of the order pending any appeal.